Sneed, J.,
delivered the opinion of the court:
In 1857, the firm of Oheatham, Watson & Co., convey 5,01.0 acres of land, in Cheatham county, to' Samuel Watson, one of said firm, and to A. Anderson, Thomas J. Poster, E. S. Cheatham, Washington Barrow, C. W. Nance, and Samuel Kimbro. All the purchase money was paid except that due from Barrow, and he paid upon his purchase $1,047.55.
Each of the vendees took a separate conveyance of an undivided sixth part of the whole, except that Nance and Kimbro took jointly one-sixth interest in the property. The price for which each purchaser gave his note, for the one-sixth interest thus purchased, was $4,166.66, making the aggregate sum of $25,000, a lien being retained in each deed.
Samuel Kimbro, by a subsequent arrangement, was released as a purchaser, and five of the six purchasers from Cheatham, Watson & Co., became owners each of two-elevenths of said land, and C. W. NanCe of one-eleventh *245 thereof. On the 31st of March, 1860, these parties, who were carrying' on the business of making barrels on said land, under the name of the Oak Yale Barrel Company, sold this tract of land to Samuel Ximbro and O. W. Nance, including improvements thereon, and some personalty and «lateral for their business, at the price of $40,000. The deed recites that $10,000 of said $40,000 has been paid by a lot of land on Maple street, South Nashville, this day conveyed to W. Barrow, trustee for the vendors, and the remaining $30,000 were secured by three notes of Samuel Ximbro and W. L. Nance, for $10,000 each, indorsed by complainant, Isaac Paul and Andrew Gregory. The deed further recites, “for the payment of which notes, or any notes substituted for them, a lien is retained upon the 5,010 acres of land. It .is also recited in this deed that Cheatham, "Watson & Co. hold a lien upon the 5,010 acres, which is not impaired by this deed.”
On the 2d day of April, 1869, two days after the conveyance of the 5,010 acres to Ximbro and Nance, the latter executed his deed to Barrow, trustee for Watson and others, whereby he conveyed the Maple-street lot, a lot on College street, and a lot in Edgefield, recited in the deed to be for $18,400 in hand, paid to me, W. L. Nance, being so much allowed me in payment for 5,010 acres of land in Cheatham county, Tennessee, purchased by me and Samuel Ximbro, at the price of $40,000. The deed then describes each lot, and concludes, “altogether for the aforesaid consideration of $18,400, credits to mei in the purchase above stated of 5,010 acres for $40,000.” The bargainor then covenants that he is seized of said land— have a good right to convey the same — and that it is unin-cumbered excej>t the Edgefield lots, which he binds himself to remove. He then warrants the title against all persons whatsoever. At the time of the making of this deed by Nance, the throe notes of $10,000 each were srir-rendered, and three notes of $7,200 were given in their stead. These three notes, and the lots conveyed at $18,400, *246 made $40,000, the price of the Cheatham county land. The three $10,000 notes were indorsed by Paul and Gregory. Nance executed a deed of trust upon said 5,010 acres of land to indemnify his sureties upon said notes, two of which had been assigned and sued upon, and all have been paid in full, and partly by his said sureties; and this bill is brought to sell the 5,010 acres of land, to be applied to the satisfaction of debts which are a lien upon it according to their priority.
The main question presented is upon the claim by defendants to have $3,500, the price of the Edgefield lots, declared a lien upon the 5,010 acres, superior to the claims of the sureties, who are complainants, and who» have paid part of the $7,200 notes.
The chancellor gave the preference to the vendors of Nance, upon the ground, it seems,, that the bill, which is taken for confessed against said vendors, states that “if the facts be as alleged, complainants suppose that the price of the Edgefield property would be a lien upon the 5,010 acres.”
The facts alleged and shown to be true, are that Nance did not pay for the Edgefield lots, and the vendors to him of said Edgefield lots filed their bill in the chancery court, and the lots were sold to pay the purchase money, and thus the title was lost. The chancellor states that whether they were correct in their supposition, it is useless to inquire. They claim to bring the defendants into court with this concession made to them, and the latter are entitled to hold them to it as long as it remains a part of the proceedings. And he adds: “It would not be fair to the defendants, who have made no defense to the bill on the faith of this concession, to allow the complainants now to insist that they were mistaken in their inference.”
We do not understand that a party presenting facts correctly in his bill, and expressing an erroneous opinion as to the conclusions of law upon the facts thus stated, is estopped thereby from having the correct judgment of the *247 law upon the admitted facts. The existence or nonexistence of a lien in this case was a question of law, and the opinion or concession of the complainant could not make it otherwise.
“A party is not estopped by his admission or assertion of a conclusion of law upon undisputed facts.” Herm. Estoppel, 8, 245. We do not see how defendants are prejudiced by having failed to answer, or how they could have been benefited so. far as the question under consideration is concerned, by answering. The facts were stated in the bill substantially as they were shown by the evidence to exist. And the inference of the law from those facts was for the court to declare, without reference to the opinions of the solicitor in the cause. Upon the facts stated and the prayer of the bill to subject the 5,010 acres to the payment of the debts which are liens upon it, and for general relief, we are of opinion that complainants may have such relief as the facts stated warrant, and that they are not precluded because they may have supposed that they were entitled to it.
The question then recurs, is the Oak Yale Barrel Company, or are the individuals- composing that company, entitled to a lien upon the land for the amount of the price at which they took the Edgefield lots in payment pro tanto for the 5,010 acres? It is as an absolute payment pro tanto, and trusted to Uance’s covenant as security for that title, they could not, as against those having intervening equities, assert a lien for the price of said lots. By the terms of their conveyance they took the Maple-street lot as a payment, and reserved upon the face of the deed a lien for the three notes of $10,000 on each, or any notes substituted therefor. Within a day or two after they had executed their deed reciting the payment of the Maple-street lot, and before the registration of their deed, they took a conveyance from iSTance for the. Maple-street lot, a College-street lot, and the Edgefield lots, and for the aggregate price of $18,400, and substituted three notes of $7,200 *248 each for three original notes of $10,000 each, and tire lien, as to these notes last taken as substitutes for those first taken, by the express terms of the conveyance, attached. But it cannot be said that a lien was retained for the price of the Edgefield lot. The deed executed by Nance, which was accepted by tire members of the company, recites that the $18,400 was allowed as a payment on the 5,010 acres, and was credited on the purchase of the 5,010 acres, and the deed from Watson and others to Nance and Kim-bro, shows that $10,000 was paid on the 5,010 acres by a lot on Maple street, and three notes were executed for the balance of the $10,000 notes, and that-the lien retained was to secure these notes; or any other notes substituted for them. The language is explicit that the lien, is retained to secure notes and not as indemnity for title to the lot, which was taken with covenants of warranty as absolute payment. The principle is that where a lien has been expressly retained to a specified extent, it is equivalent to a waiver of that lien to any greater extent. 1 Sm. and Marsh., 465; 2 Vern., 281; 1 Paige, 31; 2 Leigh, 353; 4 Wheat., 291. And it was the understanding of the sureties that the lots were so taken, and thus nearly half of the purchase money was paid, and a lien retained only for the remaining half. While Nance would be liable on his covenants for failure of title to the Edegfield lot, we are of opinion that no lien can be enforced as against complainants, and to their prejudice for such failure of title, and to this extent the chancellor's decree will be reversed. But as to the debt due Cheatham, Watson & Co., we think the chancellor was correct in Ms conclusion, and, further, that such debt is due from, and a lien only on Barrow’s interest. But, because the. proper parties are not before the court, the cause will be remanded for new parties, and for the purpose of making such other and further orders as may be necessary.