Sartain v. Dixie Coal & Iron Co.

## D. W. Sartain *v.* Dixie Coal & Iron Co.

### (*Nashville.* December Term, 1924.)

1. **REPLEVIN.** Defendant cannot maintain cross-replevin.

Defendant in replevin cannot maintain cross-replevin. (*Post, pp.* 636.)

Case cited and approved: Dearmon v. Blackburn, 33 Tenn., 390.

2. **VENDOR AND PURCHASER.** Vendor cannot repudiate parol sale without putting vendee in statu quo.

Vendor cannot repudiate parol sale and retain possession without putting vendee *in statu quo.* (*Post, pp.* 636-643.)

Cases cited and distinguished: Biggs v. Johnson, 1 Shan. Cas., 622; Jennings v. Bishop, 3 Shan. Cas., 138.

3. **EQUITY.** Defendant may rely on maxim requiring complainant to do equity without pleading it in answer.

In replevin bill for coal, in which complainant claimed the right to repudiate parol sale of minerals, without putting defendant *in statu quo*, the defendant could rely on maxim that "he who seeks equity must do equity," without pleading it in answer. (*Post, pp.* 643, 644.)

4. **EQUITY.** Under maxim requiring one who seeks equity to do equity, other party is awarded relief as condition imposed on complainant.

Under maxim that "he who seeks equity must do equity," the equitable relief awarded to the other party is in the nature of a condition imposed upon the complainant by the chancellor. (*Post, p.* 644.)

5. **EQUITY.** Maxim of equity is available to defendant in replevin brought in equity.

---

*On right of vendee of land to rescind contract for sale without putting vendor in *statu quo*, see note in 30 L. R. A. 66.

Sartain v. Dixie Coal & Iron Co.

Maxim that he who seeks equity must do equity is available to defendant in replevin brought in equity under extended statutory jurisdiction of chancery court. *(Post, pp.* 644-646.)

Case cited and distinguished: Lenoir v. Mining Co., 88 Tenn., 168.

6. **EQUITY.** Plaintiff must come with clean hands and do equity, whether .he comes under original or under statutory jurisdiction of chancery court.

Whether plaintiff comes under the original or under the statutory jurisdiction of the chancery court, he must come with clean hands, and must in a proper case do ;equity. *(Post, p.* 646.)

7. **ESTOPPEL.** "Judicial estoppel" defined.

"Judicial estoppels" are estoppels arising from sworn statements made in the course of judicial proceedings, generally in a former litigation, in absence of showing that statement was made inadvertently or through mistake, and are based on public policy and not on prejudice to adverse party by reason thereof, as in case of equitable estoppel. *(Post, p.* 647.)

Cases cited .and approved: Smith v. Fowler, 80 Tenn., 163; Johnston v. Ry. Co., 146 Tenn., 135; Hamilton v. Zimmerman, 37 Tenn., 39; McCoy v. Pearce, 1 Shan. Cas., 87; Cooley v. Steele, 39 Tenn., 605; Seay v. Ferguson, 1 Tenn. Ch., 287; Stillman v. Stillman, 66 Tenn., 169; Stephenson v. Walker, 67 Tenn., 289; Nelson v. Claybrooke, 72 Tenn., 687; Chilton v. Scruggs, 73 Tenn., 308; McEwen v. Jenks, 74 Tenn., 289; Allen v. Westbrook, 84 Tenn., 251; Grier v. Canada, 119 Tenn., 17; Tate v. Tate, 126 Tenn., 169; Smith v. Cross, 125 Tenn., 159; Daniel v. Dayton Coal & Iron Co., 132 Tenn., 501; Dunlap v. Sawvel, 142 Tenn., 696; Memphis Keeley Inst. v. Keeley Co., 155 F., 964; Simmons Medicine Co. v. Mansfield Drug Co., 93 Tenn., 84; Early v. Williams, 135 Tenn., 249; Kobbe v. Harriman Land Co., 139 Tenn., 251; Murrell v. Watson, 2 Shan. Cas., 244; Watterson & Riley v. Lyons, 77 Tenn., 568; Verhine v. Ragsdale, 96 Tenn., 532; Barnes v. Brown, 1 Tenn. Ch. App., 726; McLemore v. Railroad, 111 Tenn., 639; Parkey v. Ramsey, 111 Tenn., 302; Stamper v. Venable, 117 Tenn., 557; Bloomingdale v. Durell, 1 Idaho, 33; Maher v. Bull, 39 Ill., 531.

Sartain v. Dixie Coal & Iron Co.

Cases cited and distinguished:  Walker v. Walker, 3 App. Cas., 670; Southern Coal & Iron Co. v. Schwoon, 145 Tenn., 191;  Stamper v. Venable, 117 Tenn., 557;  Hill v. Harriman, 95 Tenn., 300.

8. **EQUITY.**  Allowance of amendment to sworn answer without objection from complainant held not abuse of discretion.

In replevin bill for coal, in which original sworn answer alleged that not more than one-fifth of the coal came from complainant's land, allowance of amendment to pleading that no part thereof came from such land, without objection thereto on part of complainant, *held* not abuse of discretion.  (*Post, pp.* 647-655.)

Cases cited and approved:  Tenn. Fertilizer Co. v. International Agrl. Corp., 146 Tenn., 451;  McEwen v. Jenks, 74 Tenn., 289;  Cooley v. Steele, 39 Tenn., 605;  Stillman v. Stillman, 66 Tenn., 169;  Stephenson v. Walker, 67 Tenn., 289;  McCoy v. Pearce, Thomp. Cas., 145; Stearns Coal & Lumber Co. v. Jamestown Ry. Co., 141 Tenn., 206.

Cases cited and distinguished:  Allen v. Westbrook, 84 Tenn., 251; Tate v. Tate, 126 Tenn., 169.

9. **ESTOPPEL.**  Rule of judicial estoppel may be invoked in proceeding in which sworn statement was made, in exceptional case.

Rule of judicial estoppel may only in exceptional case be invoked in proceeding in which the sworn statement was made.  (*Post, pp.* 655-657.)

Case cited and approved: . Johnston v. Cinn. N. O. & T. P. Ry., 146 Tenn., 135.

10. **JUDGMENT.**  Court could not render decree not supported by pleading.

In replevin for coal, in which the answer denied complainant's title to the land in which the coal was mined, and did not rely on parol sale from complainant, court could not render decree for defendant on theory that complainant had conveyed minerals by parol sale and could not repudiate sale *without putting defendant in statu quo.*  (*Post, p.* 657.)

11. **APPEAL AND ERROR.**  Cause remanded for further proceedings on reversal of decree where proof is not satisfactory.

The supreme court, in reversing decree because proof was not supported by pleading, will ordinarily proceed to render such a decree

on the record as should have been made under the pleadings and relevant proof; but where the proof, though voluminous, is not satisfactory, will remand the case for further proceedings before the chancellor. (*Post, pp.* 657, 659.)

Cases cited and approved: McEwen v. Troost, 33 Tenn., 186; Dulaney v. Dunlap, 43 Tenn., 306; Charles v. Taylor, 48 Tenn., 528; Saylors v. Saylors, 50 Tenn., 525; Stewart v. Glenn, 50 Tenn., 581; Humberd v. Kerr, 67 Tenn., 291; Oneal v. Smith, 78 Tenn., 294.

*Headnotes 1. Replevin, 34 Cyc, p. 1477 (1926 Anno); 2. Vendor and Purchaser, 39 Cyc, p. 1377; 3. Equity, 21 C. J., section 560 (1926 Anno); 4. Equity, 21 C. J., section 152; 5. Equity, 21 C. J., section 162; 6. Equity, 21 C. J., sections 153, 163, 177; 7. Estoppel, 21 C. J., section 21; 8. Equity, 21 C. J., section 645; 9. Estoppel, 21 C. J., section 21 (1926 Anno); 10. Judgments, 33 C. J., section 98; 11. Appeal and Error, 4 C. J., section 3240.

## FROM GRUNDY.

Appeal from the Chancery Court of Grundy County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. T. L. Stewart, Chancellor.

Robinson & Lockhart and W. C. Abernathy, for appellant.

C. H. Garner, for appellee.

Mr. Malone, Special Judge, delivered the opinion of the Court.

This is a replevin bill for certain coal alleged to have been mined on the property of the complainant, Sartain.

Under answer and cross-bill, filed by the defendant, alleging the insolvency of complainant, etc., the chancel-

lor permitted a cross-replevin, and turned the coal over to the defendant, upon the execution of a sufficient forthcoming bond. This action, we may observe in passing, was plainly erroneous. *Dearmon* v. *Blackburn* (1853), 1 Sneed (Tenn.), 390, 392, 393, 60 Am. Dec., 160; 23 R. C. L., 881, 882.

As stated in the latter text: "It is the well-settled general rule that one from whom property has been taken by a writ of replevin cannot maintain a cross-replevin or another action to recover possession of the property while the first action is pending."

The chancellor, on the hearing dismissed the bill, and the court of civil appeals affirmed the decree.

Complainant brings the case to this court by *certiorari*.

A large amount of proof has been taken, and many questions of law and fact are discussed in the briefs of counsel; but in the view which we taken of the case, only a few of these need be noted.

The facts, briefly stated, are as follows:

In 1916, complainant, Sartain, purchased the land in question from Robert Phipps, by parol sale. There was a residence on the land, and Sartain added certain other improvements, and has since resided there. He insists that Phipps sold him four acres, and Phipps says that he sold four acres; but when a deed was made by Phipps, some three years later, it conveyed only two acres.

In 1918, J. H. and T. B. Northcut leased to defendant Dixie Coal & Iron Company a large tract of land, which surrounded and included the four acres on which Sartain was then living. At that time, as already stated, Sartain had not obtained a deed from Phipps, and had no color of title. The Dixie Coal & Iron Company began

mining operations, and in February or March, 1919, ran a cross-entry near or under Sartain's premises.

He protested against this, and the matter was referred by the employees of the company to T. B. Northcut, one of the lessors. Northcut thereupon took up the question of the exchange of the coal lying under the land which Sartain owned for an additional surface acreage.

While there is some confusion and conflict in the evidence, we concur in the view of the chancellor and court of civil appeals that a parol sale or exchange was then made.

By this parol agreement the Northcuts transferred and conveyed to Sartain the surface rights in eight acres (being four acres in addition to the four claimed by him), and he conveyed to them all the mineral rights in the land which he was claiming under his parol purchase from Phipps, excluding only sufficient earth or mineral to support his residence and barn.

A deed, dated March 29, 1919, from J. H. Northcut to Sartain, appears in the record. It bears out the terms of the parol exchange, as stated in the testimony of Sartain, reciting that for a consideration of $1, "and the exchange of mineral for surface," T. B. and J. H. Northcut, of the firm of H. B. Northcut & Son, have quitclaimed to D. W. Sartain a certain tract of land, which is then described by metes and bounds, containing about eight acres, and "bounded all around by the lands of said Northcut."

The deed recites that—"The surface only is conveyed to tract of land with sufficient underground mineral and solid left to support said Sartain's barn and dwelling house."

This deed is signed only by J. H. Northcut, and is not acknowledged.

Complainant, Sartain, said nothing about it in his deposition, and did not even mention the parol sale or agreement until this was developed on his cross-examination. The deed was produced by his counsel during the cross-examination of J. H. Northcut, after Northcut had stated that only two additional acres of surface were conveyed under the parol contract, and that no deed was made. When the deed was thus produced (apparently for purposes of contradiction), Northcut admitted that it was in his handwriting, and signed by him, but could not remember anything about it, nor could he explain it. He says:

"That this paper, if it represents anything, was just made to show Mr. Sartain during this delay my good faith in the transaction."

As already stated, Sartain makes no explanation whatever of the deed, nor does he tell how it came into his possession.

It appears that there was a delay, on the part of Sartain, in obtaining a deed from his parol vendor, Phipps. This deed was dated October 9, 1919, and covered only two acres, instead of the four acres which Sartain claimed he had bought.

In any event, Sartain went into possession of the additional acreage, conveyed under his parol agreement with Northcut, fenced it, and put part of it in cultivation.

In the fall of 1919, a few weeks before the bill herein was filed, complainant notified defendant to cease mining on his premises, and put a fence across the face of the entry, which fence was removed by defendant's em-

ployees. The mining operations were suspended under an injunction issued in another suit between the same parties.

There is a conflict in the evidence concerning the exact point where the coal now in dispute was mined— whether or not this was under Sartain's two-acre tract, for which he had a deed from Phipps.

Sartain had never offered, before bringing his suit, or in his bill, or during the taking of the proof, to return the additional four-acre surface which he acquired under the parol trade with Northcut; nor did he return, or offer to return, the unacknowledged deed, dated March 29, 1919.

I. The chancellor placed his decision on the following grounds, as shown by his written opinion:

(a) That complainant could not rescind his parol agreement of sale without putting Northcut "*in statu quo.*"

As said in the chancellor's opinion: "He cannot retain possession of the land, or part of the land purchased under parol agreement from Northcut, and declare the transaction is not binding on him."

(b) That complainant has not "put himself in position to plead the statute of frauds."

(c) That under the parol agreement there was no trespass or interference, on the part of the defendants, in mining the coal.

It is claimed, on behalf of complainant, that there was no pleading to justify the chancellor's decree, nor that of the court of civil appeals, and in this connection it is pointed out that the defendant filed a sworn answer and cross-bill in which no mention was made of the parol

Sartain v. Dixie Coal & Iron Co.

sale; nor was there any claim that the mining was justified thereunder.

On the contrary, the contention of the defendant was that complainant had no title to the land, and therefore was not entitled to immediate possession of the coal; that Northcut owned the land, and therefore his lessees had a right to mine the coal; and that complainant's deed from Phipps was champertous and void.

Thus it is averred in the sworn answer:

"Defendant, further answering, says that complainant, as defendant is informed and believes, claims the ownership and the right to possession of said two cars of coal by virtue of a deed alleged to have been executed to him by one Robert Phipps to about two acres of land in Grundy county, Tenn., in October 1919. Complainant has no title whatever to the land described in his said deed, nor is he now, nor has he ever been, in possession of the coal underlying the surface of said land. That at the time of the execution of said deed to complainant, and long prior thereto, James H. Northcut, defendant's lessor, with defendant and others as his tenants, was in actual, peaceable, open, public, notorious, exclusive, and adverse possession of said land described in complainant's said deed and especially the coal thereunder, by registered assurance of title, purporting to convey an estate in fee and definitely describing the boundaries thereof, and that complainant's said deed is champertous, void, and of no effect."

It is also pointed out that defendant, in this sworn answer and cross-bill, states that "not more than one-fifth of the coal in each of said cars of coal came from the land described in complainant's said deed, which con-

tains approximately two acres of land, and of which two acres complainant claims to be in possession;" that the other four-fifths came "from other land not claimed by the defendant and of which the complainant does not claim to be in possession;" and that the one-fifth and four-fifths have been "so mixed and intermingled that it is impossible to separate the same," etc., and therefore the coal is not subject to an action of replevin.

Thereafter, the defendant was permitted to amend its answer and cross-bill, in the present case and three other cases between the same parties, so as to allege that:

"Since the filing of defendant's answer as a cross-bill, defendant has caused a survey to be made of the land described in complainant's deed from Phipps, and also the entry and rooms where the coal replevied was taken, and finds, and so alleges, that none of the coal replevied in any of these causes was taken from the land covered by said deed from Phipps to complainant."

As will be noted, neither of the defenses held good by the chancellor are pleaded. The parol sale is not mentioned; and, on the contrary, the theory is advanced that complainant has no title to the land, and that title is in the defendant's lessor.

It is also contended that the coal which came from complainant's inclosure, held under his deed from Phipps, had been mingled with other coal; the inference being that even if he owned this coal under said deed, complainant could not show which was his property, and could not maintain replevin.

The chancellor's attention was challenged to this condition of the pleadings by a petition to rehear, filed on behalf of the complainant which appears in the record.

The court of civil appeals affirmed the case on one of the grounds mentioned by the chancellor, viz., the holding that the parol sale was not void, but voidable, and that under the terms of the parol sale of the coal to Northcut, the defendant was justified in its mining operations beneath Sartain's premises, even if the coal were shown to have been mined within the two-acre tract which he held under registered deed from Phipps.

II.   Can this decree be sustained?

It is insisted on behalf of the complainant:

First.   That a vendor may repudiate a parol sale, and retain possession of the land, without putting his vendee *in statu quo;* and in this connection complainant cites the case of *Biggs* v. *Johnson* (1876), 1 Shan. Cas., 622.

This, it may be observed, was an action at law, and the court says, at page 626: "We have no case in a court of law that makes a tender of the land back or restoration of the possession, a condition precedent to recovery of the money or property paid under an invalid contract; but a number where such recovery has been had without such tender."

The court further says, at page 627: "It is proper to say, that in all cases of this kind the better practice is to file a bill in the chancery court, disaffirming the contract, where all parties being before the court the possession of the land can be restored and account had of the purchase money, with an adjustment of the rents, thus doing complete justice in the case and avoiding the necessity of several suits for this purpose."

There was a vigorous dissenting opinion by Judge TURNEY, who said at page 629: "The purchaser ought

not to be permitted to hold under a void contract, and at the same time deprive the other party to the contract of all its benefits he has not repudiated, until he has placed the other party as near as may be *in statu quo.*"

In the latter case of *Jennings* v. *Bishop* (1883), 3 Shan. Cas., 138, wherein Judge COOPER delivered the court's opinion, a bill was filed by the parol vendor to have the sale declared void, because not in writing.

After stating that there was no technical estoppel which precluded the complainant from maintaining his bill, it is said at page 142:

"But there is a fundamental principle of equity which often closes the doors of a court of chancery against a party when seeking relief in that forum, however clear may be his legal rights, which is independent of the doctrine of estoppel in its usual sense.

"That principle is that a person who comes into chancery for equity must do equity, and must consequently show that he is in a condition to comply with the requirement before he can put the machinery of the court in motion in his favor. Although a vendee may file a bill to avoid a parol contract for the sale of land, and to recover the purchase money paid, yet he can only obtain relief in equity by placing the vendor *in statu quo,* and restoring to him the possession of the land, at least at the end of the litigation."

We think, therefore, that the first objection made on behalf of the complainant is not well taken.

Second. It is said that the defendant does not, in its answer, rely on the maxim that "he who seeks equity must do equity."

We cannot agree that this constitutes a sound objection, nor would we reverse the decree if the answer of the defendant were otherwise unobjectionable. Under this maxim the equitable relief awarded to the other party is in the nature of a condition imposed upon the complainant by the chancellor.

As said by Mr. Pomeroy: "According to its true meaning, therefore, the terms imposed upon the plaintiff, as the condition of his obtaining the relief, must consist of the awarding or securing to the defendant something to which he is justly entitled by the principles and doctrines of equity, although not perhaps by those of the common law—something over which he has a distinctively equitable right. In many cases, this right of relief thus secured to or obtained by the defendant, under the operation of the rule, might be recovered by him, if he as plaintiff, the parties being reversed, had instituted a suit in equity for that purpose. But this is not indispensable, nor is it even always possible. The rule may apply, and under its operation an equitable right may be secured or an equitable relief awarded to the defendant which could not be obtained by him in any other manner; that is, which a court of equity, in conformity with its settled methods, either would not, or even could not, have secured or conferred or awarded by its decree in a suit brought for that purpose by him as the plaintiff." 1 Pomeroy's Equity (3d Ed.), section 386.

One of the illustrations given by Mr. Pomeroy is the case of the "wife's equity to a settlement"—a case where the husband seeks the aid of a court of equity, in order to reach the wife's property, and the court, under certain circumstances, compels the complainant, "as a con-

dition of his obtaining relief, to secure a portion of the property to the separate use of the wife by a settlement, although at law she has no right over it. This is sometimes done in a case where the wife herself could, by means of her own suit, have obtained the same relief; but it may also be done where, under the settled doctrines of equity, no such suit could be maintained by the wife.'' 1 Pom. Eq. (3d Ed.), section 386, note 1.

Third. It is insisted for complainant that this maxim only appears in cases where the complainant is seeking some equitable relief, and that a replevin suit is merely a legal action, although brought in equity under the extended statutory jurisdiction of the chancery court.

We think this point has been settled adversely to the plaintiff's contention, in the case of *Lenoir* v. *Mining Co.* (1889), 88 Tenn., 168, 14 S. W., 378.

It was there held that a pure ejectment bill would be dismissed where the bill showed on its fact that the suit was being prosecuted solely for the benefit of the vendee to a champertous deed.

The court said, at page 174 (14 S. W., 380): ''The act of the legislature enlarging the jurisdiction of courts of equity does not deprive these tribunals of the right to require, as heretofore, that parties seeking relief shall come into court with clean hands.''

The complainant, for his own purposes, sought the aid of the chancery court in his replevin suit, instead of bringing an action at law. He might have had an injunction or any other extraordinary relief by proper averments. The relief afforded in equity was far superior to that at law. Having thus sought the assistance of a court of equity, he could not be heard to dispute its

fundamental maxims. Whether the plaintiff comes under the original or under the statutory jurisdiction of the chancery court, he must come with clean hands, and must, in a proper case do equity.

Fourth. The final insistence of the complainant is that under the sworn answer and cross-bill of the defendant a "judicial estoppel" arises, which precludes it from relying on the defenses sustained by the chancellor and by the court of civil appeals.

The objection thus presented necessitates a brief consideration of the doctrine mentioned.

The term "judicial estoppel," as used in our reports, indicates particularly that class of estoppels arising from sworn statements made in the course of judicial proceedings, generally in a former litigation, although in two of our cases the statement was made either in a pleading (*Smith* v. *Fowler,* 12 Lea, 163), or in testimony (*Johnston* v. *Ry. Co.,* 146 Tenn., 135, 240 S. W., 429), in the same case.

In all the others, however, the basis of the estoppel claimed was a sworn statement made in a former proceeding. *Hamilton* v. *Zimmerman* (1857), 5 Sneed, 39; *McCoy* v. *Pearce* (1858), 1 Shan. Cas., 87; *Cooley* v. *Steele* (1859), 2 Head, 605; *Seay* v. *Ferguson* (1873), 1 Tenn. Ch., 287; *Stillman* v. *Stillman* (1874), 7 Baxt., 169; *Stephenson* v. *Walker* (1874), 8 Baxt., 289; *Nelson* v. *Claybrooke* (1880), 4 Lea, 687; *Chilton* v. *Scruggs* (1880), 5 Lea, 308; *McEwen* v. *Jenks* (1880), 6 Lea, 289; *Allen* v. *Westbrook* (1886), 16 Lea, 251; *Grier* v. *Canada* (1907), 119 Tenn., 17, 107 S. W., 970; *Tate* v. *Tate* (1912), 126 Tenn., 169, 148 S. W., 1042.

In the brief of defendants "judicial estoppel" is confused with "equitable estoppel." Thus it is said: "The party invoking an estoppel must have been misled to his injury"—citing *Walker* v. *Walker*, 3 App. Cas., 670, 683.

Again: "The complainant must have acted on the recital and must have been prejudiced thereby"—citing 2 Pomeroy. Eq. Jur., section 813, *Smith* v. *Cross* (1911), 125 Tenn., 159, 140 S. W., 1060; *Tate* v. *Tate* (1912), 126 Tenn., 169, 148 S. W., 1042; *Daniel* v. *Dayton Coal & Iron Co.* (1915), 132 Tenn., 501, 507, 178 S. W., 1187.

It must be admitted that some of our cases are not altogether free from the same confusion. Hence the general statements made in some of the opinions with regard to acting so as to mislead another to his prejudice. *Allen* v. *Westbrook* (1886), 16 Lea, 251, 255, 256; *Tate* v. *Tate* (1912), 126 Tenn., 169, 212, 214, 215, 148 S. W., 1042.

It is obvious that a case may exist where both principles are involved. Thus, a party may make a sworn statement or admission in a deposition or pleading, and another party may act on the strength of this statement. But while this is generally spoken of as a judicial estoppel, it might be perhaps more accurately classified as an equitable estoppel, for the party making the statement would be equally estopped if it were *not* under oath. The gravamen of the estoppel in such cases is the reliance which the other party placed upon the statement.

The distinction between the two classes of estoppel is pointed out in *Southern Coal & Iron Co.* v. *Schwoon* (1921), 145 Tenn., 191, 226, 239 S. W., 398, 409, where it is said:

Sartain v. Dixie Coal & Iron Co.

"This doctrine [equitable estoppel] as we have seen, can only be invoked generally by persons who have been prejudiced. But the exception which entitles any party, whether prejudiced or not, to invoke the doctrine constitutes what has been referred to in the decisions as judicial estoppel"—quoting the familiar extract from *Hamilton* v. *Zimmerman*, 5 Sneed, 39, 48, as to the sanctity of an oath.

We think this distinction is entirely sound. If judicial estoppels are to be merely turned into equitable estoppels, the whole doctrine falls to the ground, and a very valuable restraint on reckless or perjured litigants is taken away.

It is hardly necessary to point out how much the doctrine of judicial estoppel would thus be weakened, but some of the effects may be briefly noted.

(a)  Equitable estoppel must be pleaded. *Dunlap* v. *Sawvel* (1919), 142 Tenn., 696, 703, 223 S. W., 142. No case holds this with regard to a judicial estoppel, and from the nature of such an estoppel it should not necessarily be incumbent upon the litigant to plead it. It is based on public policy and might perhaps be raised by the court itself, like the doctrine of unclean hands. *Memphis Keeley Institute* v. *Keeley Co.* (1907), 155 F., 964, 88 C. C. A., 112, 16 L. R. A. (N. S.), 921; *Simmons Medicine Co.* v. *Mansfield Drug Co.* (1893), 93 Tenn., 84, 98, 99, 23 S. W., 165.

(b)  The person claiming to have been influenced must have been not only without knowledge of the state of facts, but without available means of acquiring such knowledge. Where both parties have the same means of ascertaining the truth, there can be no equitable estoppel.

*Early* v. *Williams* (1916), 135 Tenn., 249, 261, 186 S. W., 102, L. R. A., 1916F, 418.

(c) An equitable estoppel does not arise out of the pleadings in another case, where there is want of mutuality, and the matter is purely *res inter alios*. *Kobbe* v. *Harriman Land Co.* (1917), 139 Tenn., 251, 278, 201 S. W., 762.

As has been pointed out, none of these principles and limitations apply to the true doctrine of judicial estoppel, which is based upon public policy, as announced in the earlier cases.

The Tennessee law of judicial estoppel (properly so called) has nothing to do with other parties to the suit; nor does it matter whether they even knew of the sworn statement. It is, as already stated, based solely upon that public policy which upholds the sanctity of an oath, and precludes a party who has made a sworn statement —even in another litigation—from repudiating the same when he thinks it to his advantage to do so.

It might well be termed "estoppel by oath."

Another feature of the law of judicial estoppel, emphasized by our cases, is the presence or absence of explanation of the previous statement made under oath.

While the appellate courts of Tennessee have, for more than fifty years, upheld and preserved the sanctity of an oath by the application of this principle, yet, in order to avoid injustice, the severity of the rule has been tempered by this exception, viz.: If the party sought to be estopped can show that his previous statement under oath was made inadvertently or through mistake—"inconsiderately," as many of the cases say—he will not be precluded by his former statement. For cases

where no explanation was made of the previous sworn statement, see *Hamilton* v. *Zimmerman* (1857), 5 Sneed, 39; *Cooley* v. *Steele* (1859), 2 Head, 605; *Nelson* v. *Claybrooke* (1880), 4 Lea, 687; *Chilton* v. *Scruggs* (1880), 5 Lea, 308; *McEwen* v. *Jenks* (1880), 6 Lea, 289.

For cases where a satisfactory explanation was made, see *Smith* v. *Fowler*, (1883), 12 Lea, 163; *Seay* v. *Ferguson* (1873), 1 Tenn. Ch., 287; *Allen* v. *Westbrook* (1886), 16 Lea, 251.

It may further be marked that the alternative idea suggested by Judge COOPER, in *Allen* v. *Westbrook*, supra, viz., that the sworn statement, if not relied on, must be shown to have been willfully false, seems a hurtful deviation from the older cases which, in effect, place the burden on the party who makes the sworn statement to show that it was inadvertent. The suggestion made in *Allen* v. *Westbrook* would seem to shift the burden of proof to the party who claims the estoppel. A close reading of *Allen* v. *Westbrook* will disclose the fact that the discussion of judicial estoppel was largely, if not entirely, *obiter*—the real decision having been based on equitable estoppel—and the alternative suggestion above mentioned has not been followed.

There is, it may be observed, another class of cases which deals with unsworn statements made, or with positions taken by litigants, during the litigation. While these cases are sometimes spoken of in the opinions of this court as involving judicial estoppels, it is evident that they are not based upon the rule under consideration.

As illustrating this class of cases, see *Murrell* v. *Watson*, 2 Shan. Cas., 244 (1877); *Watterson & Riley* v. *Lyons*, 9 Lea, 568 (1882); *Verhine* v. *Ragsdale*, 96 Tenn.,

532, 35 S. W., 556 (1896); *Barnes* v. *Brown,* 1 Tenn. Ch. App., 726 (1901); *McLemore* v. *Railroad,* 111 Tenn., 639, 69 S. W., 338 (1902); *Parkey* v. *Ramsey,* 111 Tenn., 302, 76 S. W., 812 (1903); *Stearns Coal & Lumber Co.* v. *Jamestown R. R. Co.,* 141 Tenn., 203, 208 S. W., 334 (1918); *Heggie* v. *Hayes,* 141 Tenn., 219, 208 S. W., 605, 3 A. L. R., 150 (1918).

These cases proceed upon the theory that a litigant may not assume inconsistent positions. Thus, in *Heggie* v. *Hayes,* supra, it was held that in a seduction case, where defendant's counsel, in argument before the jury, conceded that the plaintiff bore a good reputation, and the case was tried on that theory, he could not, on motion for a new trial, introduce evidence tending to besmirch her character. The court says, at page 227 (208 S. W., 607):

"This is a proper case for the application of the doctrine of judicial estoppel which we have just discussed in *Stearns Coal & Lumber Co.* v. *Jamestown Ry.,* 141 Tenn., 203, 208 S. W., 334."

In *Stearns Coal & Lumber Co.* v. *Jamestown Ry. Co.,* supra, the holding was that where an ejectment bill was filed by the complainant to recover a strip of land occupied as a right of way by the railroad company, and the bill charged that an amendment to the company's charter was void, and it was not a legally organized corporation, but showed on its face that the complainant had previously sued the company as a corporation, the bill was properly dismissed on demurrer. The court says, at page 206 (208 S. W., 334).

"While the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a

former judicial proceeding which in a later proceeding he undertakes to contradict, yet it is frequently applied, where no oath is involved, to one who undertakes to maintain inconsistent positions in a judicial proceeding. *Stamper* v. *Venable,* 117 Tenn., 557, 97 S. W., 812.''

In *Stamper* v. *Venable,* 117 Tenn., 557, 97 S. W., 812, it was held that a litigant who had contended in the chancery court and in the court of chancery appeals that certain documents were deeds could not, in the supreme court, shift his position and claim that they were wills; the court saying, at page 562 (97 S. W., 813):

''It may accordingly be laid down as a broad proposition that one, without mistake induced by the opposite party, who has taken a particular position deliberately in the course of litigation, must act consistently with it. One cannot play fast and loose.''

The foregoing paragraph is quoted by the court from Bigelow on Estoppel (5th Ed.), p. 717, and it may be noted that the Tennessee cases on this point simply follow the current of authority. As has been pointed out, the rule governing them is not strictly one of estoppel, but rather a rule of positive procedure, necessary for the orderly dispatch of litigation. 10 R. C. L., 698.

The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the sanctity of an oath. The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar.

It now remains to apply these principles to the instant case.

(a) The complainant contends that a judicial estoppel arises from the sworn statement of the answer, to the effect that not more than one-fifth of the coal replevied came from the land claimed by complainant, under his deed from Phipps. He further insists that the chancellor should not have allowed the amendment already mentioned, the substance of which was that since filing the original answer a survey had been made, which showed that none of the coal came from this particular tract. Thus it is said:

"They first deliberately swear in the answers, that a part of the coal was taken from Sartain's land, then they in their proof undertake to show that no part of it came from the complainant Sartain's land, under this amendment of record, without getting rid of the sworn answer on this question."

Complainant insists that the record shows no explanation of the previous sworn statement, and in this connection cites the case of *Hill* v. *Harriman* (1895), 95 Tenn., 300, 309, 32 S. W., 202, 205, where it is said:

"Pretermitting all questions with respect to the sufficiency or insufficiency of the case made by the amended bill in either aspect thereof, we are of the opinion that it was properly stricken from the files, because accompanied by no excuse for, or explanation of, the positive antagonism, conflict, and contradiction between it and the original bill in some of their most material and vital allegations. A party will not be allowed the benefit of such amendatory pleading without specifically showing some inadvertence or mistake in the original pleading, and giving full and satisfactory reason therefor, and for the change desired to be made."

Complainant also cites the cases of *Bloomingdale* v. *Durell,* 1 Idaho, 33, and *Maher* v. *Bull,* 39 Ill. 531.

The question now presented is not one of judicial estoppel, but whether the chancellor abused his discretion in allowing an amendment to a sworn pleading. In the case of *Hill* v. *Harriman,* supra, as will be observed, the chancellor had disallowed the proposed amendment.

It is undoubtedly true that the liberal rules which apply to amendments of unsworn pleadings do not prevail where the pleading is under oath. But the amendment in this case was apparently made without objection. Certainly none appears in the record. There is no wayside bill of exceptions; nor is there a recital in the decree. Even the petition to rehear is silent on this subject. So, far as the record shows, the point was raised for the first time on appeal.

We do not mean to say that exceptions must be taken to every ruling and interlocutory decree made by the chancellor during the progress of an equity suit, in order to permit an assignment of error in the appellate courts. There is a clear distinction between courts of law and courts of equity in this regard.

Nor do we intend to depart from the sound doctrine that sworn pleadings cannot be amended without explanation, and as a matter of course.

We simply hold that on this record, and under the facts disclosed, we cannot say that the chancellor abused his discretion in allowing the amendment. As stated by this court in *Tennessee Fertilizer Co.* v. *International Agricultural Corporation* (1921), 146 Tenn., 451, 471, 243 S. W., 81, 87, amendments allowed below, "in the absence of a showing to the contrary, must be presumed

to have been authorized by the chancellor in the proper exercise of his legal discretion and in furtherance of justice.''

(b)• But the more serious contention remains to be considered, viz., the insistence that the sworn answer, instead of relying on the parol sale, makes a positive claim of ownership in the defendant's lessor under registered color of title. Such a claim (it is said) is wholly at variance with the theory that complainant owned the surface of the land, and defendant's lessor the mineral, under a parol sale.

Should the principle of judicial estoppel be applied where the sworn statement is made in the same litigation?

As heretofore shown, in all our cases, except two, the party sought to be estopped under this branch of the rule had made the statement under oath in some previous proceeding. This court has so announced the doctrine in former opinions. Thus, in *Allen* v. *Westbrook* (1886), 16 Lea, 251, 255, it is stated in the opinion of Judge COOPER that—''It may be considered as settled by the decisions of this court that a person cannot, upon grounds of public policy, be permitted to set up title to property after a solemn disclaimer of title under oath, or a solemn admission under oath of title in another, in a pleading or deposition in a previous suit. *McEwen* v. *Jenks,* 6 Lea, 289; *Cooley* v. *Steele,* 2 Head, 605; *Stillman* v. *Stillman,* 7 Baxt., 169; *Stephenson* v. *Walker,* 8 Baxt., 289; *McCoy* v. *Pearce,* Thomp. Cas., 145.''

Again, in *Tate* v. *Tate* (1912), 126 Tenn., 169, 212, 148 S. W., 1042, 1053, the court, in an opinion by Chief Justice NEIL, says:

"The law upon this subject, as exhibited in our cases, is to the effect that where one states on oath, in a former litigation, either in a pleading, or in a deposition, or in oral testimony, a given fact as true, he will not be permitted to deny that fact in a subsequent litigation, although the parties may not be the same."

And see *Stearns Coal & Lumber Co.* v. *Jamestown Ry. Co.,* 141 Tenn., at page 206, 208 S. W., 334.

While in unusual cases it might be necessary to apply the rule of judicial estoppel, when the sworn statement was made in the proceeding under consideration, we think that such a case would be exceptional. Thus, in *Johnston* v. *Cinn. N. O. & T. P. Ry.* (1922), 146 Tenn., 135, 240 S. W., 429 (a case involving both "inconsistency" and "estoppel by oath"), the only evidence relied upon to sustain the verdict of a jury, upon certain vital issues of fact, was the evidence of the complainant, who swore with equal positiveness on both sides of the question.

But ordinarily, in such cases, the rights of the parties may be worked out by the application of the doctrine of "inconsistency" alone, or other legal principles—and this is true in the instant case.

It is not necessary here to do anything more than to apply the rule that proof without pleading will not sustain a decree. There is no pleading to sustain the defenses which were held good by the chancellor and by the court of civil appeals. The answer does not remotely suggest the theory of a parol sale, on which the decisions of these courts are based. Pleading without proof and proof without pleading are equally unavailing to support a decree.

150 Tenn.—42.

III. What should be the decree of this court?

Ordinarily, we should proceed to make such a decree on the record as should have been made under the pleadings and relevant proof. Gibson's Suits in Chy. (2d Ed.), section 1317.

But in a proper case, and in furtherance of justice, this court may remand the cause for further proceedings before the chancellor. Id., section 1318; *McEwen* v. *Troost* (1853), 1 Sneed, 186, 194; *Dulaney* v. *Dunlap* (1866), 3 Cold., 306, 316; *Charles* v. *Taylor* (1870), 1 Heisk., 528, 530; *Saylors* v. *Saylors* (1871), 3 Heisk., 525, 534; *Stewart* v. *Glenn* (1871), 3 Heisk., 581, 584; *Humberd* v. *Kerr* (1874), 8 Baxt., 291, 293; *Oneal* v. *Smith* (1882), 10 Lea, 294, 340, 343.

In all these cases decrees were reversed and causes remanded with leave to make amendments or take other necessary steps in furtherance of justice. In some, at least, the relief seems to have been granted by the court on its own motion.

Thus, in *McEwen* v. *Troost,* supra, a case involving the validity of a gift, it was said at page 194: "As the case now appears, we consider that the gift is valid; but without giving any final judgment, the case will be remanded, with leave to amend the pleadings, and with leave to Mary Troost to institute a proceeding in the nature of a cross-bill, if she think proper; so that the validity of the deed may be fairly tested upon the facts as they may appear."

It may be observed that while the proof in this case is voluminous, it is not altogether satisfactory. As the chancellor remarked, in his opinion:

Sartain v. Dixie Coal & Iron Co.

"There is considerable proof, *pro* and *con,* as to where these entries out of which the coal in question was mined are located with reference to the east line of complainant's land. It occurs to the court that these are questions which could have been demonstrated to a reasonable certainty by an actual survey and location of the east line and the mines or entries thereunder."

The case will therefore be reversed and remanded, to the end that it may be heard again, and decided by the chancellor, in accordance with the principles set forth in this opinion.

Leave will be given to either party to take further proof, if so advised, in advance of the hearing, within such time, and under such conditions, as the chancellor may prescribe; and the chancellor may, in his discretion, consider any application by either party to amend the pleadings herein, bearing in mind the rules stated in this opinion.

The defendant Dixie Coal & Iron Company will pay the costs of this appeal, other costs to abide the decree of the chancellor on the remand.