## WILLIAMS v. NOTTINGHAM.—84 S. W. (2d) 114.

Eastern Section.    April 13, 1935.

Petition for Certiorari denied by Supreme Court, June 29, 1935.

. Thach & Thach and Joe Frassrand, all of Chattanooga, for plaintiff in error Mildred Williams.

. Noone & Ziegler, of Chattanooga, for defendant in error, Nottingham.

CROWNOVER, J.    This action was brought by Mrs. Mildred Williams against Mrs. Annie R. Nottingham, executrix of the estate of C. C. Nottingham, deceased, to recover $125,000, which Mrs. Williams averred she had put into the hands of said C. C. Nottingham, in Liberty bonds and cash, a part for investment and a part for safe-keeping.

On motion of defendant that plaintiff be required to make her declaration more specific, plaintiff amended her declaration to aver that the first, second, third, and fifth counts of her declaration were based on a parol agreement entered into between herself and C. C.

Nottingham, and the fourth count, on a written agreement, which was as follows:

"United States Depository
"The First National Bank
"Capital $1,250,000.00      Surplus $1,000,000.00
"Chattanooga, Tennessee, Jany. 25, 1928.

"Received of Mrs. Mildred Williams Fourth 4½ Liberty Bonds valued at seventeen thousand dollars to be held for safe keeping
$17,000.00.
"Form 9009                              C. C. Nottingham."

Defendant filed a plea of estoppel: that the plaintiff having averred in her declaration in a divorce proceeding styled Mildred Wellington Williams v. Rufus Carter Williams, in Richmond, Virginia, that she had no property, except certain real property, and specifically that she did not own any property in the custody of said C. C. Nottingham, is estopped to maintain this action.

Defendant also filed a plea of non est factum to the third count, a plea of the general issue of not guilty, and a plea of nil debet.

The death of Mildred W. Williams was suggested, and on motion the cause was revived in the name of O. B. Wunchow, executor.

The case was tried by the judge and a jury. At the conclusion of all the evidence, defendant moved the court for peremptory instructions, which motion was sustained and the jury was directed to return a verdict for defendant, which was done, and judgment was entered dismissing the case.

Motion for a new trial having been overruled, plaintiff appealed in error to this court and has assigned as error that the court erred in directing the jury to return a verdict in favor of defendant because there was material evidence showing that the plaintiff was entitled to recover:

(1) $64,000.00, less credits, plus interest, for bonds and money given to said C. C. Nottingham for investment.

(2) $17,000.00 and interest for bonds that had been left with said C. C. Nottingham for safe-keeping.

The facts necessary to be stated are:

Mrs. Mildred W. Hall was, in 1919, a widow with one child, and no property or income. She conducted a boarding house or rooming house in Atlanta. On April 1, 1919, she married Rufus C. Williams, of Richmond, Va.

Some time in 1923, or early in 1924, she filed a bill for divorce. In 1924, Williams died while the action for divorce was pending, and Mrs. Mildred Williams received about $21,000 from his estate.

Joe Frassrand, of Chattanooga, who had been attorney for Mrs. Williams, testified that he collected for her, in 1924, in addition to the $21,000 from Mr. Williams' estate, $10.000 from the sale of a

house in Atlantic City and $3,600 from somebody in West Palm Beach, Fla.

C. C. Nottingham, of Chattanooga, died in 1929.

In September, 1931, this action was instituted against his executrix.

■ 1. The first assignment of error is that the court erred in directing the jury to return a verdict in favor of defendant executrix because there was material evidence showing that Mrs. Williams was entitled to recover from the executrix $64,000, less credits, plus interest, for bonds and money given by her to C. C. Nottingham for investment. In her declaration Mrs. Williams averred that on January 8, 1920, she had given Mr. Nottingham $64,000 to invest for her. She died before the case was tried. Defendant introduced in evidence an affidavit of Mrs. Williams which had been filed in her action for divorce from her husband, R. C. Williams, which case was tried in Richmond, Va., and read parts of her deposition taken in that case. In the affidavit, dated May 11, 1923, and her deposition taken in 1923 or 1924, she stated that she had no property of any kind except certain real estate where she and her mother lived. In her deposition she stated that Mr. Nottingham had no funds of hers, and held none in trust for her or her son.

Mrs. Williams is estopped to set up such claims in this case inconsistent with her sworn statements made in the divorce suit in the Virginia court.

"Where one states on oath, in a former litigation, either in a pleading, or in a deposition, or in oral testimony, a given fact as true, he will not be permitted to deny that fact in a subsequent litigation, although the parties may not be the same. Hamilton v. Zimmerman, 5 Sneed, 39; Cooley v. Steele, 2 Head, 605; Stillman v. Stillman, 7 Baxt., 169, 175; Stephenson v. Walker, 8 Baxt., 289; Nelson v. Claybrooke, 4 Lea, 687, 692; McEwen v. Jenks, 6 Lea, 289; Watterson & Riley v. Lyons, 9 Lea, 566; McCoy v. Pearce, 1 Tenn. Cas., 87." Tate v. Tate, 126 Tenn., 169, 212, 148 S. W., 1042. 1053; Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633, 647. 266 S. W., 313; Southern Coal & Iron Co. v. Schwoon, 145 Tenn., 191, 226, 239 S. W., 398; McLemore v. Railroad Co., 111 Tenn., 639, 666, 69 S. W., 338.

The deposition of Mrs. Wunchow, mother of Mrs. Williams, taken in this case, was read at the trial. Mrs. Wunchow testified that her daughter, Mrs. Williams, gave Mr. Nottingham in her presence, in 1920, $30,000 to invest for her; and in 1921, in her presence, gave him $34,000 to invest, $30,000 in bonds, and $4,000 in money. She further testified that this money had been given to Mrs. Williams by her husband, R. C. Williams, now deceased; that he gave Mrs.

Williams $30,000 the first year of their marriage (1919) and $34,000 the second year (1920). But defendant read in evidence the testimony of Mrs. Wunchow given in the Williams divorce proceeding in the Virginia court, in which she stated that her daughter, Mrs. Williams, "had not been getting anything from Williams." The following questions were asked her, which she answered as follows:

"Q. Did your daughter have some funds held in trust by Mr. C. C. Nottingham, as trustee for herself or her son? A. Well, he is a kind of trustee in her business down there.

"Q. I mean, does he hold some property and funds in trust for her? A. No, no, indeed.

"Q. Who does he hold for? A. Nobody."

She also testified that her daughter had no source of income. Mrs. Wunchow's testimony in the Williams divorce case is in direct conflict with her testimony in this case.

Mr. Frassrand testified that in 1923 or 1924 Mrs. Williams asked him to collect $64,000 for her from Mr. Nottingham; that the only evidence of the debt she had was a bundle of foreign bonds, municipal bonds, and government bonds; that when he discussed the matter with her the following took place:

"I asked Mrs. Williams some questions about the matter. She says, 'I can prove by Mr. Nottingham that he owes me this money,' I asked her how she would do that. She says, 'You have an extension telephone,' she says, 'You get on the extension and I will call Mr. Nottingham and verify that fact by Mr. Nottingham that he owes me that money.' She got on the telephone and I got on the extension. He did not answer the telephone but he came to the telephone, and she told him, . . ."

"So she asked him, substantially, I don't remember the exact language, it has been practically ten years ago, she asked him substantially, 'Mr. Nottingham,'—I believe she called him Cal, 'What do you know about that $64,000.00 you owe me.' 'Mildred, I will be right up to see you about that, and we will get everything fixed,' or something to that effect. About three months later she was still complaining he hadn't done anything. At that time I called Mr. Nottingham myself; I told him that I wanted to make an appointment with him to discuss some matters. Mr. Nottingham said to me, he asked me what I wanted to see him about. I told him I represented Mrs. Mildred W. Williams, and she had requested me to collect an indebtedness against him, which she claimed was $64,000.00, and that I would like to talk with him about it. He says, 'I will take the matter up with Mrs. Williams if you will permit me, and see if we can handle it ourselves.' He did not deny or admit that he owed the $64,000.00."

This testimony was some evidence which should have taken the

case to the jury if Mrs. Williams had not been judicially estopped to maintain her action for this $64,000.

This assignment of error must be overruled.

■ 2. It is insisted that the court erred in directing a verdict as to the $17,000 claim. This receipt for $17,000 of bonds, hereinabove set out, is dated 1928, and the divorce case was filed in 1923. The testimony in the divorce case does not operate as an estoppel as to this claim, as the record shows that she received other money after the divorce.

■ Defendant pleaded non est factum as to this receipt. A number of witnesses were introduced by the plaintiff who testified that the signature and the body of the receipt were in Mr. Nottingham's handwriting. Defendant introduced a number of witnesses who testified that the signature was not his nor the body of the receipt in his handwriting. It was, of course, a question for the jury to decide.

"The action of the trial judge in directing a verdict for defendant, because he did not believe plaintiff's story, cannot be sustained under the rules of procedure adopted in this state. See Sills v. Lathan, 3 Higgins [3 Tenn. Civ. App.], 141; Thurman v. Bradford, 3 Higgins [3 Tenn. Civ. App.], 474." Stanley Bird Motor Co. v. Alley, 1 Tenn. App., 202, 207.

The fact that the bonds are described in the receipt as "Fourth 4½%" bonds instead of 4¼ per cent. cannot invalidate the receipt.

This assignment of error must be sustained.

It results that the judgment of the lower court must be reversed, and the cause will be remanded to the circuit court of Hamilton county for a new trial on the last proposition.

The cost of the appeal is adjudged against the executrix and the surety on her appeal bond. but the cost that accrued in the lower court will await the final determination of the case.

Faw, P. J., and DeWitt, J., concur.