IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 12, 2002 Session

## NANCY S. WEBBER v. GARY D. WEBBER

**Direct Appeal from the Chancery Court for Anderson County**
**No. 00CH0517     Hon. William E. Lantrip, Judge**

**FILED FEBRUARY 4, 2003**

**No. E2002-01355-COA-R3-CV**

---

The Trial Court held it had jurisdiction over marital property and alimony. Husband argued since the divorce was granted in Nevada, the Nevada Decree was res judicata on these issues. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

David A. Stuart and Roger A. Miller, Clinton, Tennessee, for Appellant, Gary D. Webber.

W. Andrew Fox, Knoxville, Tennessee, for Appellee, Nancy S. Webber.

**OPINION**

Nancy Webber ("wife"), filed a Petition for Enforcement of Foreign Judgment in this State against Gary Webber ("husband"), seeking enforcement of a Nevada divorce decree which was entered divorcing the parties in 1998 in the State of Nevada.

In the Petition the wife asserted that while the Nevada divorce was valid as a status judgment, that Court did not have personal jurisdiction over the husband. Since that Court didn't have jurisdiction over alimony and property issues, she sought to have these issues addressed by the Tennessee court.

Husband moved to dismiss, on the grounds that the Nevada decree was *res judicata* as to all issues in the divorce.

The Trial Court then entered an Order finding the wife should be allowed to domesticate the Nevada decree, and that the decree was entitled to full faith and credit. Subsequently, the Court determined the husband was judicially estopped from arguing that the Nevada court was the proper forum for issues relating to marital property, and held that it had jurisdiction and did adjudicate issues pertaining to marital property, alimony and attorney's fees.

On appeal, the husband insists that the doctrine of Judicial Estoppel was not applicable to this case, and that *res judicata* would bar the wife's attempt to litigate property issues in Tennessee, after obtaining the divorce in Nevada.

In the Nevada divorce action, the husband swore that he was a resident of Tennessee, and that had no contact with the State of Nevada. He then moved to dismiss because the Nevada Court had no personal jurisdiction over him. He recited in his Motion that he was entering a special appearance for the purpose of contesting jurisdiction. He also conceded that the Nevada divorce statute allowed the Nevada Court to assert jurisdiction over the plaintiff and to award a divorce, but asserted that the Nevada Court could not dispose of any property rights.

However, when the wife brought this action in Tennessee, seeking to have the property issues adjudicated, the husband argued that he entered a general appearance in Nevada, that the Court there had jurisdiction over the property rights of the parties, and since the Final Decree made no provision for same and was not appealed, those issues were now barred by *res judicata*.

Our Supreme Court has previously stated, however, that, "[w]hile the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict, yet it is frequently applied, where no oath is involved, to one who undertakes to maintain inconsistent positions in judicial proceedings." *Stearns Coal & Lumber Co. v. Jamestown R. Co.*, 208 S.W. 334 (Tenn. 1919). Recently the Supreme Court explained the doctrine of judicial estoppel as follows:

> Under the doctrine of judicial estoppel "a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action." *Obion County v. McKinnis*, 211 Tenn. 183, 364 S.W.2d 356, 357 (1962); *see also Layhew v. Dixon*, 527 S.W.2d 739, 741 (Tenn.1975); *Werne v. Sanderson*, 954 S.W.2d 742, 745 (Tenn.App.1997). Designed to prevent a party from "gaining an unfair advantage," *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn.1995), the indoctrination of judicial estoppel by Tennessee courts has been cogently explained by this Court in *Sartain v. Dixie Coal & Iron Co.*, 150 Tenn. 633, 266 S.W. 313 (1924):

The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the sanctity of an oath. The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar.

*Id*. at 318.

*Marcus v. Marcus*, 993 S.W.2d 596, 602 (Tenn. 1999).

This Court has also previously ruled that estoppel applies to a party who takes an inconsistent position in a proceeding, *e.g., Montgomery v. Nicely*, 301 S.W.2d 379 (Tenn. Ct. App. 1956). In another case *Cothron v. Scott*, 446 S.W.2d 533 (Tenn. Ct. App. 1969), this Court quoted with approval from 31 C.J.S. Estoppel §117:

The rule is well established that during the course of litigation a party is not permitted to assume or occupy inconsistent and contradictory positions, and while this rule is frequently referred to as "judicial estoppel," it more properly is a rule which estops a party to play fast-and-loose with the courts.

*Id.* at 535-536.

The Trial Court properly ruled that the husband was estopped from alleging in the Tennessee Court that the Nevada Court had jurisdiction, when he took the opposite position during the pendency of the Nevada action. However, husband argues that the Motion was never ruled upon, and that his attorney later signed the Decree of Divorce, and that such constitutes a general appearance in that action.

Under Nevada law, a party may enter a special appearance for the purpose of contesting personal jurisdiction, and it is not converted to a general appearance unless the party seeks additional relief. *See Simpson v. O'Donnell*, 654 P.2d 1020 (Nev. 1982). *Also see Estin v. Estin*, 334 U.S. 541 (1948). The record before us illustrates that the husband entered a special appearance in Nevada for the purpose of contesting personal jurisdiction, and the Nevada Court entered a Divorce Decree because the Court had personal jurisdiction over the wife. That Court did not adjudicate any of the parties' property rights. *See Simpson*.

Husband's argument that his attorney made a general appearance in the Nevada Court is not established by the record, except by a possible negative inference, i.e., the Decree signed by the husband does not specifically state the husband made a special appearance, but by similar negative inference, the Court recognized husband's special appearance, in that the Decree only

recites that the Court had jurisdiction of the plaintiff and the subject matter.[1]  The husband's argument is without merit.

Based upon the foregoing, it is clear that the Nevada Decree cannot be *res judicata* on the property issues.  *Res judicata* applies only if the prior judgment "concludes the rights of the parties on the merits."  *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995). Thus, a judgment in a prior action has to be final, meaning that it disposed "of the whole merits of the case leaving nothing for the further judgment of the court."  *Id.* at 460.

Since the Nevada Court had no jurisdiction to adjudicate the parties' property rights, *res judicata* may not be invoked in this action, and we affirm the Judgment of the Trial Court.  The cost of the appeal is assessed to Gary D. Webber.

_____
HERSCHEL PICKENS FRANKS, J.

---

[1]From the actual arguments of the husband's attorney contained in the transcripts and the pleadings filed on the husband's behalf, it is clear the husband only made a special appearance for the purpose of contesting jurisdiction and this position was consistent both before and after the Decree of Divorce.