IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 4, 2004 Session


# DOT BUSH GOOT ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Circuit Court for Davidson County**
**No. 01C-3841     Thomas Brothers, Judge**

---

**No. M2003-02013-COA-R3-CV - Filed November 9, 2005**

---

This appeal involves a dispute between the surviving spouses of five disabled city employees and the Metropolitan Government of Nashville and Davidson County over the amount of life insurance benefits payable after the employees died. The surviving spouses filed three separate lawsuits asserting that the city had breached their spouses' employment contracts as well as its fiduciary duty and had committed fraud by concealing information and by knowingly providing false information regarding a waiver of premium benefit that would have greatly increased their death benefits. These suits were consolidated in the Circuit Court for Davidson County. The trial court granted a summary judgment dismissing all the surviving spouses' intentional tort claims because they were barred by the Governmental Tort Liability Act. The remaining breach of contract claims of three of the surviving spouses were tried to a jury, and the trial court directed a verdict for the city at the close of the plaintiffs' proof. Thereafter, the trial court granted a summary judgment dismissing the remaining claims of the other two surviving spouses. All the surviving spouses have appealed. We affirm the summary judgment orders dismissing the surviving spouses' intentional tort claims and the breach of contract claim of one surviving spouse. We reverse the directed verdict with regard to three of the remaining surviving spouses' breach of contract claims, as well as the summary judgment dismissing the other surviving spouse's breach of contract claim.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part
And Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. PATRICIA J. COTTRELL, J., not participating.

Dan R Alexander, Nashville, Tennessee, for the appellants, Dot Bush Goot, Norma Taylor, Bobby Duke, Joe Reese, and Faye Jackson.

Karl F. Dean, Michael B. Bligh, and John L. Kennedy, for the appellee, Metropolitan Government of Nashville and Davidson County.

# OPINION

## I.
### METROPOLITAN GOVERNMENT'S GROUP LIFE INSURANCE BENEFIT

The Metropolitan Government of Nashville and Davidson County, like most large public and private employers, provides group insurance benefits to its employees. Ever since 1965, it has provided life insurance coverage to active employees and former employees who are receiving disability or retirement benefits.[1] The New York Life Insurance Company issued the first group term life insurance policy in 1965, and Aetna Life Insurance Company replaced New York Life Insurance Company in 1999. The Metropolitan Government is responsible for paying the premiums for this policy, and the insurance companies are responsible for determining eligibility and paying the claims.

At all times relevant to this case, the group term life insurance policy provided active city employees with life insurance coverage equal to twice their annual salary to a maximum of $50,000. Former employees receiving a disability or service pension were entitled to $7,500 in coverage. However, the policy also contained a waiver of premium provision that entitled employees who became disabled before their sixtieth birthday to maintain their life insurance coverage at the same level they had as active employees without continuing to pay the premiums that had been paid by the Metropolitan Government while they were active employees.[2] To be eligible for this benefit, the disabled former employee was required to be "disabled" as defined in the insurance policy, and the employee seeking the waiver of premium benefit was required to apply to the insurance company for this benefit within two years after being found eligible for a disability pension.

The life insurance benefits payable to the spouses of eligible disabled employees differed significantly depending on whether the employee established his or her right to the waiver of premium benefit. The spouses of disabled employees who had not qualified for the benefit received $7,500 upon the death of their spouse. However, the spouses of disabled employees who qualified for the benefit and who had earned $25,000 or more when they were active employees received $50,000 upon the death of their spouse.

## II.
### THE CLAIMS OF THE SURVIVING SPOUSES

The three lawsuits giving rise to this appeal involve the surviving spouses of five employees of the Metropolitan Government who became disabled and took disability retirement between 1985 and 1996. Roy Bush, a budget director, began drawing disability benefits in January 1985 following his second open heart surgery. Following his death in April 14, 1992, his widow, Dot Bush Goot, received life insurance benefits in the amount of $7,548.75. Blant Duke, a civil warrant processor

---

[1] Metropolitan Gov't of Nashville & Davidson County, Tennessee Code § 3.20.010 [hereinafter Metro. Code] provides covered employees with life insurance benefits "during all times that he [or she] is an eligible employee. . . ."

[2] Metro. Code § 3.20.030(C) states that "[w]aiver of premium benefits for disability occurring prior to age sixty shall be included [in the "life contract"]. The word 'disability' shall have the definition as is customary with the insurer and not as otherwise defined in the system."

in the Davidson County Sheriff's Department, qualified for disability benefits in February 1985. When he died, his widow, Bobbie Jane Duke, received $7,544.68. Gene Jackson, an employee of the Department of Public Works, was a member of the old Davidson County pension plan because he had declined to become a member of the Metropolitan Employee Benefit System. He qualified for a disability pension in January 1987 because of heart problems. After he died on June 18, 1998, his widow, Wanda Faye Jackson, received $7,543.88. Clyde Taylor, a sergeant with the Metropolitan Police Department, qualified for a disability pension in 1992. Following his death on April 7, 2000, his widow, Norma H. Taylor, received $7,500. Finally, Marilyn Reese, an employee at General Hospital, qualified for disability in February 1996 after injuring her back. After she died on April 9, 2001, her surviving husband, Joe Lloyd Reese, received $7,500.

The surviving spouses of these five employees later discovered that they would have received a much larger death benefit had their deceased spouse qualified for the waiver of premium benefit within two years after being found eligible for a disability pension. Two of the surviving spouses, Ms. Goot and Ms. Jackson, attribute their former husbands' failure to qualify for the benefit to their ignorance of the benefit because employees of the Metropolitan Government had not provided their husbands with timely information about this benefit.

Two other spouses, Ms. Duke and Ms. Taylor, assert that their former husbands did not qualify for the waiver of premium benefit because employees of the Metropolitan Government provided them with false information regarding their eligibility. Ms. Duke asserts that her husband inquired about the waiver of premium benefit and was told that he was not eligible for the benefit because he was in the wrong department. Ms. Taylor asserts that her husband applied for the benefit after he had been disabled for one year but that he was told that his application was too late.

The remaining spouse, Mr. Reese, concedes that his wife received two documents explaining the waiver of premium benefit when she qualified for a disability retirement in 1996 and that she did not apply for the benefit within two years after she became eligible for disability payments. He also concedes that her July 1999 application for the benefit was turned down because it was too late. However, he asserts that the Metropolitan Government should have given his wife another chance in 2000 to apply for the benefit after Aetna Life Insurance Company suggested to the Metropolitan Government that it offer a one-time grace period to permit disabled employees who had not requested the waiver of premium benefit to submit their applications.

On July 18, 2001, Mmes. Goot, Taylor, and Duke filed a complaint in the Chancery Court for Davidson County seeking to recover the death benefit they would have received had their husbands qualified for the waiver of premium benefit. They alleged that they were third-party beneficiaries of their husbands' group life insurance contracts and that the Metropolitan Government had breached its contractual and fiduciary duties to their husbands "by concealing and failing to inform Plaintiffs of contract provisions that inure to their benefit . . . and by intentionally lying to the Plaintiffs to the detriment of the Plaintiffs and to the benefit of the insurance companies . . . ."

Mr. Reece, represented by the same attorney who was representing Mmes. Goot, Taylor, and Duke, filed his complaint in the Chancery Court for Davidson County on July, 30, 2001 seeking the death benefit he would have received had his wife qualified for the waiver of premium benefit. He

too alleged that he was a third-party beneficiary of his wife's group life insurance contract and that the Metropolitan Government had breached its contractual and fiduciary duties by failing to notify either his wife or him of Aetna Life Insurance Company's July 20, 2000 proposal for the grace period. Like Mmes. Goot, Taylor, and Duke, Mr. Reese accused the employees of the Metropolitan Government of "concealing and failing to inform" and of "intentionally lying."

On December 7, 2001, the Chancery Court for Davidson County transferred the complaint filed by Mmes. Goot, Taylor, and Duke to the Circuit Court for Davidson County.[3] On December 21, 2001, Ms. Jackson, represented by the same attorney who was representing the other four surviving spouses, filed her complaint in the Circuit Court for Davidson County. She asserted that the Metropolitan Government had breached its fiduciary duties and its employment contract with her husband by "concealing and failing to inform" her of the "waiver of premium option" that would have provided her with a larger death benefit and by "intentionally lying" to her and her husband.[4]

On May 3, 2002, all three complaints were consolidated in the Circuit Court for Davidson County for "pre-trial and discovery purposes only." At this point, the Metropolitan Government had filed an answer to Ms. Jackson's amended complaint but had not yet filed answers to either Mr. Reese's complaint or the complaint filed on behalf of Mmes. Goot, Taylor, and Duke.[5] On October 15, 2002, the Metropolitan Government filed identical motions for summary judgment in all three cases. While none of these motions complied with Tenn. R. Civ. P. 7.02(1),[6] we glean from the record that the motions asserted that the surviving spouses' intentional tort claims based on the alleged misrepresentations by employees of the Metropolitan Government were barred by Tenn. Code Ann. § 29-20-205(6) (2000). The surviving spouses responded by insisting that their claims sounded in contract rather than in tort. On January 15, 2003, following a hearing on December 13, 2002, the trial court entered an order granting partial summary judgments in all three cases because "the . . . [plaintiffs'] tort claims arise out of alleged misrepresentations by employees of the Defendant and are therefore barred by the Governmental Tort Liability Act." However, the court permitted the cases to continue because "the facts put forth by the . . .[surviving spouses] arguably state a claim for breach of contract and will require a trial."

On June 17, 2003, the trial court empaneled a jury to try the remaining breach of contract claims of Mmes. Goot, Taylor, and Duke. The Metropolitan Government moved for a directed verdict on numerous grounds at the close of the plaintiffs' case-in-chief. It was at this point that the parties and the court discovered that the Metropolitan Government had never filed an answer. The

---

[3]The attorney representing Mmes. Goot, Taylor, and Duke had overlooked Tenn. Code Ann. § 29-20-307 (2000) vesting circuit courts with exclusive jurisdiction over claims filed under the Governmental Tort Liability Act.

[4]Mmes. Goot, Taylor, and Duke filed an amended complaint on October 8, 2001 containing allegations similar to those contained in Ms. Jackson's complaint. Mr. Reese filed a similar amended complaint on January 14, 2002.

[5]The Metropolitan Government never filed an answer to the complaint filed by Mmes. Goot, Taylor, and Duke, but no one discovered this oversight until the second day of trial on June 18, 2003. This revelation prompted the Metropolitan Government to file an answer to Mr. Reese's complaint on June 30, 2003.

[6]Tenn. R. Civ. P. 7.02(1) requires that motions "state with particularity the grounds therefor. . . ." *See Jennings v. Sewell-Allen Piggly Wiggly*, ___ S.W.3d ___, ___, 2005 WL 2513976, at *1 (Tenn. 2005).

trial court decided to direct a verdict for the Metropolitan Government after concluding that Mmes. Goot, Taylor, and Duke had "failed to prove an essential element of their claim." The court concluded that the plaintiffs had "failed to prove the terms of the insurance contract under which they claim they would have benefited [sic] had they been informed of its terms" and that without this proof the jury would be unable to determine whether their spouses "would have qualified for the waiver of premium benefit" or "to determine Plaintiffs' damages." The trial court entered an order granting the directed verdict on July 15, 2003.

On August 29, 2003, the Metropolitan Government filed new motions for summary judgment seeking dismissal of the remaining claims of Mr. Reese and Ms. Jackson. Following a hearing on October 10, 2003, the trial court entered separate orders on October 23, 2003 granting the motions and dismissing all remaining claims. The court concluded that Ms. Jackson's breach of contract claim was "barred by the applicable statute of limitations." With regard to Mr. Reese's remaining claim, the court determined that his deceased wife had been properly notified of the waiver of premium benefit and that "the July 20, 2000 letter from Aetna US Healthcare[7] did not merge with Mrs. Reese's contract of employment so as to require the Defendant to notify her of its contents."

The five surviving spouses have appealed. All five take issue with the summary judgment dismissing their intentional tort claims. Mmes. Goot, Taylor, and Duke challenge the directed verdict dismissing their contract claims. Finally, Mr. Reese and Ms. Jackson take issue with the summary judgments dismissing their contract claims.

### III.
### THE SURVIVING SPOUSES' INTENTIONAL TORT CLAIMS

Despite their insistence in the trial court that their claims sounded in contract rather than tort, all five surviving spouses take issue with the trial court's decision to grant the summary judgment dismissing their intentional tort claims on the ground that they were barred by Tenn. Code Ann. § 29-20-205(6). They assert that the trial court erred because their complaints contain claims based on intentional torts other than misrepresentation and that these claims are permitted under Tenn. Code Ann. § 29-20-310(c) (Supp. 2004). We have concluded that the trial court properly dismissed these intentional tort claims.

The doctrine of sovereign immunity, embedded in Tenn. Const. art. I, § 17, provides that suits for money damages may not be brought against the State of Tennessee or other governmental entities without their consent. *Doyle v. Frost*, 49 S.W.3d 853, 857 (Tenn. 2001); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). When the Tennessee General Assembly enacted the Governmental Tort Liability Act in 1973,[8] it consented to suits for money damages being filed against counties, municipalities, and other local government entities. The Governmental Tort Liability Act must be construed strictly because it is in derogation of the common law. *Limbaugh*

---

[7]The trial court is referring here to Aetna's proposal for the one-time grace period permitting disabled employees who had not qualified for the waiver of premium benefit to apply for the benefit.

[8]Act of May 4, 1973, ch. 345, 1973 Tenn. Pub. Acts 1243.

*v. Coffee Med. Ctr.*, 59 S.W.3d 73, 79 (Tenn. 2001). Where immunity from suit has been waived, the government entity is the proper defendant, not the government employee whose conduct caused the injury. Tenn. Code Ann. § 29-20-310(b) (Supp. 2004); *Sallee v. Barrett*, 171 S.W.3d 822, 826 (Tenn. 2005).

Tenn. Code Ann. § 29-20-205 expressly removes immunity from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his [or her] employment." However, the statute contains exceptions to waiver. While it had been believed for decades that the Governmental Tort Liability Act did not authorize suits for damages caused by a local government employee's intentional tort,[9] the Tennessee Supreme Court has now held that the Act does not embody a blanket prohibition against suits seeking damages for all intentional torts. Rather, the Court has limited the immunity to the intentional torts enumerated in Tenn. Code Ann. § 29-20-205. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d at 84.[10]

The Governmental Tort Liability Act explicitly provides that local governments retain immunity for injuries caused by their employees "deceit," Tenn. Code Ann. § 29-20-205(2), and for injuries caused by "misrepresentation by an employee whether or not such is negligent or intentional," Tenn. Code Ann. § 29-20-205(6). The issue we must decide is whether the tort claims of the five surviving spouses fall within the scope of these two provisions. We are guided in our analysis of this question by the customary rules of statutory construction, as well as our understanding of the state of the law when the Governmental Tort Liability Act was enacted. *Sallee v. Barrett*, 171 S.W.3d at 826-29; *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d at 83.

Substantial overlapping exists in modern tort law with regard to the concepts of deceit and misrepresentation. Misrepresentation is the keystone in the architecture of the tort law of fraud and deceit. 9 STUART M. SPEISER, THE AMERICAN LAW OF TORTS § 32:11, at 228 (1992); *see also Robinson v. Omer*, 952 S.W.2d 423, 426-27 (Tenn. 1997) (recognizing three separate torts based on misrepresentation, including fraud or deceit); *Holt v. Am. Progressive Life Ins. Co.*, 731 S.W.2d 923, 927 (Tenn. Ct. App. 1987). For the most part, the common-law tort of deceit is limited to cases where there was an intent to mislead. 2 FOWLER V. HARPER, THE LAW OF TORTS § 7.1, at 381 (2d ed. 1986); PROSSER AND KEETON ON THE LAW OF TORTS § 107, at 740. The concept of misrepresentation which can be traced to the common-law action of deceit, RESTATEMENT (SECOND) OF TORTS Chapter 22 Scope Note, at 54 (1977); *First Nat'l Bank v. Brooks Farms*, 821 S.W.2d 925, 927 (Tenn. 1991), is a broader concept than deceit. PROSSER AND KEETON ON THE LAW OF TORTS § 105, at 727.

---

[9]After all, negligence provides a basis for liability independent of intent. RESTATEMENT (SECOND) OF TORTS § 282 cmt. b (1965); W. PAGE KEETON ET AL. PROSSER AND KEETON ON THE LAW OF TORTS § 28, at 160-61 (5th ed. 1984) [hereinafter PROSSER AND KEETON ON THE LAW OF TORTS].

[10]The court's discussion of continuation of immunity from suit for intentional torts was limited to Tenn. Code Ann. § 29-20-205(2). The statute, however, lists other intentional torts for which immunity is preserved. Tenn. Code Ann. § 29-20-205(5) (malicious institution of judicial or administrative proceedings); Tenn. Code Ann. § 29-20-205(6) (intentional misrepresentation). Presumably, a local government would also be immune from suit arising out of an assault or battery committed by a government employee in the context of a riot, unlawful assembly, or civil disturbance. *See* Tenn. Code Ann. § 29-20-205(7).

Every one of the tort claims included in the five surviving spouses' complaints contain allegations involving "concealing and failing to inform," "intentionally lying," and "fraud, fraudulent concealment, deceit and fraudulent misrepresentation by concealing information . . . and by providing false and incorrect information known by the [d]efendants to be false." Each of these claims easily fits within the scope of the Governmental Tort Liability Act's exclusion of claims based on "deceit" and "misrepresentation." Therefore, the trial court properly granted the Metropolitan Government's motion to dismiss the surviving spouses' tort claims.

## IV.
### MS. JACKSON'S BREACH OF CONTRACT CLAIM

Ms. Jackson takes issue with the trial court's decision to grant the Metropolitan Government's summary judgment motion based on the statute of limitations. She insists that the discovery rule should apply to her breach of contract claim. We agree.

### A.

Ms. Jackson's breach of contract claim, like the claims of the other surviving spouses, arises from the employment relationship between the Metropolitan Government and her deceased spouse. Her complaint embodies essentially two theories. First, she asserts that the Metropolitan Government breached its specific obligation to explain the benefit system and infringed upon her husband's rights by failing to inform him of the existence of the waiver of premium benefit. Second, she asserts that the Metropolitan Government's failure to inform her husband of this benefit also violated its obligation of good faith and fair dealing.

The relationship of employer and employee arises out of contract. *Vargo v. Lincoln Brass Works, Inc.*, 115 S.W.3d 487, 491 (Tenn. Ct. App. 2003). It is based on the mutual assent of the parties, and it is the product of an agreement or series of agreements between the employer and employee regarding the scope and nature of the work to be performed, the duration, terms, and conditions of employment, and the compensation for performing the work. *Hamby v. Genesco, Inc.*, 627 S.W.2d 373, 375 (Tenn. Ct. App. 1981). An employment agreement may be written, oral, or a combination of the two, and the terms of the agreement may either be specifically bargained for or may be supplied by applicable legal requirements.

### 1.
### The Metropolitan Government's Contractual Obligations With Regard To Providing Its Employees with Life Insurance Coverage Containing a Waiver of Premium Provision

The Metropolitan Government is required to provide its employees with a "program of benefits . . . to provide for specific kinds of needs upon death, upon hospitalization and sickness and upon retirement because of disability or old age."[11] Included among these benefits are "benefits payable upon the death of the employee which are not inconsistent with group life insurance plans

---

[11]Metro. Code § 3.08.030(A).

in general use by businesses and industries in Davidson County. . . ."[12] Accordingly, employees who are members of the Metropolitan Employee Benefit System are entitled to be "covered for life insurance benefits during all times that he [or she] is an eligible employee. . . ."[13] In order to provide this benefit, the Metropolitan Employee Benefit Board is required to enter into a group contract with a life insurance company to "underwrite" the required insurance benefits.[14] This contract must include a "[w]aiver of premium benefits for disability occurring prior to age sixty. . . ."[15]

The Metropolitan Government's obligation to its employees does not end with simply making arrangements to provide group benefits to its employees. Because of the complexity of group benefits, the Metropolitan Employee Benefit Board must also take steps to make sure that the employees are aware of and understand what their benefits are. Accordingly, the Metropolitan Employee Benefit Board must "[d]irect the preparation of and approve a booklet explaining the metropolitan employee benefit system in full detail, and make available in the pension office to metropolitan employees full information concerning a metropolitan employee's status and his [or her] rights concerning the system. . . ."[16]

**2.**
**The Metropolitan Government's Duty of Good Faith and Fair Dealing**

Under Tennessee Law, every contract carries with it an implied covenant of good faith and fair dealing. *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996); *Elliott v. Elliott*, 149 S.W.3d 77, 84-85 (Tenn. Ct. App. 2004). As a result of this covenant, each contracting party promises to perform its part of the contract in good faith and, in return, expects the other party to do the same.

The purpose of the implied-in-law covenant is two-fold. First, it honors the contracting parties' reasonable expectations. *Bayou Land Co. v. Talley*, 924 P.2d 136, 154 (Colo. 1996); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097 (Fla. Dist. Ct. App. 1999); *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992); *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 586 (N.J. 1997). Second, it protects the rights of the parties to receive the benefits of the agreement they entered into. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995); *see also Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040 (Ariz. 1985); *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000); *Habetz v. Condon*, 618 A.2d 501, 505 (Conn. 1992). The implied obligation of good faith and fair dealing does not, however, create new contractual rights

---

[12]Metro. Code § 3.08.030(B)(1).

[13]Metro. Code § 3.20.010.

[14]Metro. Code § 3.20.010.

[15]Metro. Code § 3.20.030(C).

[16]Metro. Code § 3.08.040(A)(3).

or obligations,[17] nor can it be used to circumvent or alter the specific terms of the parties' agreement.[18]

Despite the seemingly broad application of the implied duty of good faith and fair dealing to all contracts, this court is not of one mind regarding its application to employment contracts. The Eastern Section has held that the duty of good faith and fair dealing is part of every employment contract. *Hooks v. Gibson*, 842 S.W.2d 625, 628 (Tenn. Ct. App. 1992); *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80-81 (Tenn. Ct. App. 1988). However, the Western Section has held that there is no implied duty of good faith and fair dealing in employee-at-will contracts. *McGee v. Best*, 106 S.W.3d 48, 67 (Tenn. Ct. App. 2002); *Randolph v. Dominion Bank*, 826 S.W.2d 477, 479 (Tenn. Ct. App. 1991). The Middle Section has held that the employment agreements include the implied duty of good faith and fair dealing, *Dunn v. Matrix Exhibits, Inc.*, No. M2003-02725-COA-R3-CV, 2005 WL 2604048, at *3 (Tenn. Ct. App. Oct. 13, 2005), but has also held that employers do not breach their implied duty of good faith and fair dealing when they fire an at-will employee. *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 396 (Tenn. Ct. App. 1981).

We have determined that the Western Section went too far when it completely excised the implied duty of good faith and fair dealing from at-will employment contracts. The cases before the Western Section involved at-will employees who believed that they had been fired unfairly. They asserted that their termination was a breach of the employment agreement because it violated their employer's implied duty of good faith and fair dealing. The Western Section resolved the claim in the employer's favor by holding that employment-at-will contracts do not contain an implied duty of good faith and fair dealing.

Employees-at-will have no contract right or expectation of continued, indefinite employment because they can be terminated at any time for any reason.[19] However, they may have other contract rights and expectations, such as the right and expectation to be paid the agreed-upon wage and the right and expectation of having work hours consistent with applicable federal and state law. *Williams v. Maremont Corp.*, 776 S.W.2d at 81. Because the implied obligation of good faith and fair dealing does not create new rights or modify existing contract rights, it would have been more appropriate for the Western Section to hold that the implied duty of good faith and fair dealing cannot modify the employment-at-will doctrine and, therefore, that an employer does not breach its implied duty of good faith and fair dealing when it discharges an at-will employee for any reason.

---

[17]*See, e.g.*, *PepsiCo, Inc. v. Central Inv. Corp.*, 268 F. Supp. 2d 962, 967 (S.D. Ohio 2001); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005); *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004); *Oakwood Village LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1240 (Utah 2004).

[18]*Fields v. Thompson Printing Co.*, 363 F.3d 259, 271 (3d Cir. 2004); *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1034 (Alaska 2003); *Grossman v. Columbine Med. Group*, 12 P.3d 269, 271 (Colo. Ct. App. 1999); *Gilbert v. El Paso Co.*, 575 A.2d 1131, 1143 (Del. 1990).

[19]*Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 858 (Tenn. 2002); *Baines v. Wilson County*, 86 S.W.3d 575, 578 (Tenn. Ct. App. 2002).

Accordingly, we find that the Metropolitan Government's employment agreement with its employees includes an implied obligation of good faith and fair dealing on the part of both the Metropolitan Government and its employees. This obligation required both parties to act in good faith or "to act in word and deed, in a responsible manner." *Williams v. Maremont Corp.*, 776 S.W.2d at 81 (quoting HENRY R. GIBSON, GIBSON'S SUITS IN CHANCERY § 34, at 34 (William H. Inman ed., 6th ed. 1982)).

**3.**
**The Metropolitan Government's Performance of Its Contractual Obligations**
**Regarding the Waiver of Premium Benefit**

When employers procure group insurance policies to cover their employees, they are acting for themselves and as agents for their employees. *Boseman v. Conn. Gen. Life Ins. Co.*, 301 U.S. 196, 204-05, 57 S. Ct. 686, 690 (1937); *Hale v. Am. Home Assurance Co.*, 224 Tenn. 650, 656, 461 S.W.2d 384, 386 (1970); *Bates v. Jim Rule Chevrolet, Inc.*, No. 16, 1990 WL 51295, at *6 (Tenn. Ct. App. Apr. 26, 1990) (No Tenn. R. App. P. 11 application filed); *Nidiffer v. Clinchfield R.R. Co.*, 600 S.W.2d 242, 246 (Tenn. Ct. App. 1980). Accordingly, they have a duty to act in good faith and with due diligence in obtaining insurance for their employees. *Estate of Saffles v. Reliance Universal, Inc.*, 701 S.W.2d 821, 823-24 (Tenn. Ct. App. 1985); *Nidiffer v. Clinchfield R.R. Co.*, 600 S.W.2d at 246. The surviving spouses are not taking issue in this case with the manner in which the Metropolitan Government obtained the group life insurance policies first from the New York Life Insurance Company and later from Aetna Life Insurance Company. Accordingly, for the purpose of this appeal, we presume that the Metropolitan Government breached no obligation to its employees when it obtained the group life insurance policy.

However, an employer's duty to inform its employees of their rights and benefits under a group insurance policy is independent from its obligation to procure the policy. The source of this duty may be statutory[20] or contractual or may even be imposed by the common law. *Burnette v. Purolator Courier Corp.*, No. 1284, 1990 WL 801, at *2 (Tenn. Ct. App. Jan. 9, 1990), *perm. app. denied* (Tenn. Mar. 26, 1990). In this case, Metro. Code § 3.08.040(A)(3) required the Metropolitan Government to explain the employee benefit system "in full detail" and to make available in the retirement office "full information" concerning the employees' "status and . . . rights concerning the system. . . ." Accordingly, the Metropolitan Government, as part of its employment agreement with its employees, had an obligation to fully inform its employees of their rights and status with regard to the waiver of premium benefit.

The surviving spouses have presented evidence that calls into question whether the Metropolitan Government has acted reasonably in discharging its contractual obligation to inform its employees of the waiver of premium benefit. Even though the group life insurance policy has been in place since 1965, there is evidence that prior to 1992, the Metropolitan Government either

---

[20] For example, this court held that Tenn. Code Ann. § 56-7-601(c) [now codified at Tenn. Code Ann. § 56-7-2305(a)(2)(H) (2000)] required an employer to notify its employees of their right to convert their group life insurance coverage to an individual policy. *Estate of Saffles v. Reliance Universal, Inc.*, 701 S.W.2d at 823-24.

failed to inform disabled employees of the existence of this benefit[21] or misinformed the employees who asked about it.[22] While there is some evidence that the Metropolitan Government was informing disability retirees of the existence of this benefit in 1996, general notice of this benefit was not given until the publication of *ME News*[23] in July 2001. This evidence is sufficient to create an issue for the jury regarding whether the Metropolitan Government has breached its duty to notify its employees of their benefits as well as its duty of good faith and fair dealing.

**B.**

The Metropolitan Government asserts that Ms. Jackson's breach of contract claim is time-barred because she failed to file her complaint withing six years after the purported breach of the contract in 1987 when it failed to inform her spouse of the existence of the waiver of premium benefit. Ms. Jackson concedes that the six-year statute of limitations in Tenn. Code Ann. § 28-3-109(a)(3) applies. However, she insists that the discovery rule should apply and that if it does, her complaint is timely because she filed it withing six years after discovering that her husband would have been entitled to the waiver of premium benefit had the Metropolitan Government explained it to him when he took disability retirement in 1987. The trial court concluded that Ms. Jackson's complaint was time-barred, and thus we must determine whether the discovery rule may be invoked with regard to Ms. Jackson's breach of contract claim.

**1.**

The discovery rule is a limited exception to the statute of limitations. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) (characterizing the discovery rule as an "equitable exception" to the statute of limitations). It tolls the running of the statute of limitations until the plaintiff knows or, in the exercise of reasonable care and diligence, should know that the plaintiff has a legal cause of action against the defendant. *Terry v. Niblack*, 979 S.W.2d 583, 586 (Tenn. 1998); *Hunter v. Brown*, 955 S.W.2d 49, 51 (Tenn. 1997).

The rationale underlying the discovery rule is that injured parties should not be placed in the anomalous situation of being required to file suit before they know they have been injured. *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 490 (Tenn. 1975); *Teeters v. Currey*, 518 S.W.2d 512, 515 (Tenn. 1974). The rule alleviates the intolerable result of barring a cause of action by holding that it "accrued" before the plaintiff discovered the injury or the wrong. *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982). However, the rule applies only in cases where the plaintiff did not discover and reasonably could not have been expected to discover the existence of a right of action, *Hunter v. Brown*, 955 S.W.2d at 51, and it tolls the running of the statute of

---

[21]Mmes. Goot and Jackson, whose spouses took disability retirement in 1985 and 1987 respectively, have testified that the Metropolitan Government did not inform them or their spouses of this benefit.

[22]Mmes. Duke and Taylor, whose spouses took disability retirement in 1985 and 1992 respectively, have testified that their spouses inquired into their eligibility for the waiver of premium benefit when they retired but were told that they were not eligible for the benefit.

[23]*Me News* is a publication of the Metropolitan Employee Benefit Board.

limitations only as long as the plaintiff has no knowledge at all that a wrong has occurred and, as a reasonable person, would not have been put on inquiry. *Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990).

The discovery rule was first invoked by the Tennessee Supreme Court over thirty years ago in a medical malpractice case. *Teeters v. Currey*, 518 S.W.2d at 515. It has since been applied to other tort actions, *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d at 491, including legal and dental malpractice claims. *Carvell v. Bottoms*, 900 S.W.2d 23, 28 (Tenn. 1995) (legal malpractice); *Foster v. Harris*, 633 S.W.2d at 305 (dental malpractice). However, the Tennessee Supreme Court has declined to apply the discovery rule in cases involving breach of warranty claims governed by Tenn. Code Ann. § 47-2-725 (2001),[24] defamation actions,[25] and claims for conversion of a negotiable instrument absent fraudulent concealment.[26]

The Tennessee Supreme Court has yet to address whether the discovery rule may apply to breach of contract claims and, if so, the circumstances warranting its application. However, this court appears to have endorsed the application of the discovery rule in a breach of contract case involving a lease of real property. *McFarlin v. City of Murfreesboro*, No. 86-124-II, 1987 WL 17728, at *3 (Tenn. Ct. App. Sept. 30, 1987) (No Tenn. R. App. P. 11 application filed). The property owner leased his property to a city for a landfill. The contract required the city to cover the top of the landfill with soil in accordance with applicable environmental regulations. The city abandoned the landfill, but the owner did not discover for many years that the city had failed to cover the landfill with the amount of soil required by the environmental regulations. The property owner sued the city for breach of contract within one year after discovering the condition but more than six years after the city had abandoned the property. The trial court dismissed the property owner's claim because it was not filed within the six-year statute of limitations in Tenn. Code Ann. § 28-3-109(a)(1) (2000).

This court reversed the order granting the city's motion to dismiss. We framed the issue as follows: "whether late discovery of a contract violation resulting in injury to property may effectively delay the running of the statute." *McFarlin v. City of Murfreesboro*, 1987 WL 17728, at *3. In the process of overruling the motion to dismiss, "despite the apparent running of the statute of limitations," this court noted:

> The resolution of the issue under discussion is not without doubt. It is insisted that no Tennessee authority applies the discovery rule to actions for breach of contract. . . . It is arguable that a party to a contract knows (or should know) his [or her] rights under the contract and should be alert to discover any non-feasance, misfeasance or malfeasance under the contract. While this would ordinarily be the case, in the present situation the opportunity to observe and discover

---

[24] *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d at 492.

[25] *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821-22 (Tenn. 1994).

[26] *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d at 624-25.

> violations was less obvious, for the contract was a lease in which the owner surrendered possession to the lessee for the term of the lease. Moreover, the very nature of the lease contract was such as to enable the lessee to conceal the breach of contract. That is, the contract required the lessee to cover (conceal) the rubbish with a sufficient layer of earth. Once the rubbish was covered, the depth of coverage would not be observable until the passage of time and the operation of the elements caused the deficiency to be visible.

*McFarlin v. City of Murfreesboro*, 1987 WL 17728, at *4.

We now directly address the application of the discovery rule to breach of contract actions using the criteria fashioned by the Tennessee Supreme Court to determine whether the discovery rule may be invoked with regard to a particular cause of action. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d at 620; *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d at 820. We must first consider the language of the specific statute of limitations applicable to the claim and then we must balance the policies supporting the discovery rule[27] against the policies supporting the strict application of the statute of limitations.[28]

**2.**

The six-year statute of limitations in Tenn. Code Ann. § 28-3-109(a)(3) applies to this case. That statute simply provides that contractual causes of action not otherwise expressly provided for "shall be commenced within six(6) years after the cause of action accrued. . . ." This language is quite similar to the other statutes of limitations to which the Tennessee Supreme Court has applied the discovery rule, and the statute contains no other language that would otherwise be inconsistent with the invocation of the discovery rule in proper circumstances.

As a general matter, there will be little need for the discovery rule in most breach of contract cases. A buyer is immediately aware of a breach upon the delivery of nonconforming goods, and a seller knows of the breach when payment is delinquent.[29] However, it is not difficult to envision circumstances in which a party to a contract would not be aware that the other party has breached the contract. In those circumstances, just as in tort claims involving personal injuries, it would be unjust to hold that a plaintiff's claim for breach of contract accrues before the plaintiff knew or should have known that the contract had been breached.

---

[27]The discovery rule is intended to prevent the inequity that a strict application of the statute of limitations would produce. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d at 621.

[28]All statutes of limitations are intended to preserve fairness and justice by preventing undue delay in filing lawsuits and thereby ensure that evidence is preserved and facts are not obscured by the passage of time. *Potts v. Celotex Corp.*, 796 S.W.2d at 681; *Owen v. Summers*, 97 S.W.3d 114, 123 (Tenn. Ct. App. 2001).

[29]*April Enters., Inc. v. KTTV*, 195 Cal. Rptr. 421, 436 (Ct. App. 1983) ("In the typical contract for purchase of widgets, for example, the buyer is well aware the contract has been breached when the date for delivery arrives and he has not received his widgets. Similarly, the seller knows when payment is due under the contract. If that time passes without receipt of the amount due he is easily aware that the contract has been breached.").

Many courts now apply the discovery rule to breach of contract claims and hold that a cause of action for breach of contract begins to run when a party either discovers the breach or could have or should have discovered the breach through the exercise of reasonable judgment. 31 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 79:14, at 304 (Richard A. Lord ed., 4th ed. 2004) [hereinafter WILLISTON ON CONTRACTS].[30] These courts have invoked the discovery rule in cases where (1) the breach of contract was difficult for the plaintiff to detect, (2) the defendant was in a far superior position to comprehend the breach and the resulting damage, or (3) the defendant had reason to believe that the plaintiff remained ignorant that it had been wronged. *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003). Stated another way, the discovery rule applies in cases where the breach of contract is inherently undiscoverable.[31] *April Enters., Inc. v. KTTV*, 195 Cal. Rptr. at 437; *J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 329 (Tex. App. 2002).

There are, however, at least two circumstances in which the invocation of the discovery rule would be improper, even when the breach of contract is inherently undiscoverable. First, as the Tennessee Supreme Court has pointed out, the discovery rule cannot be invoked when it is inconsistent with the terms of the applicable statute of limitations. In these circumstances, the Tennessee General Assembly has already weighed the competing policies involving the accrual of the cause of action and the tolling of the statute. Second, the discovery rule cannot supercede a contractually agreed upon limitations period as along as the agreed upon period affords a reasonable time within which to file suit. *See New Welton Homes v. Eckman*, 830 N.E.2d 32, 35 (Ind. 2005); 3 ERIC MILLS HOLMES, CORBIN ON CONTRACTS § 9.9, at 278 (Joseph M. Perillo ed., rev. ed. 1996). In these circumstances, the parties themselves have weighed the competing considerations, and their bargain should be enforced as long as it is consistent with public policy.

**3.**

According to Ms. Jackson, neither she nor her husband were aware of the waiver of premium benefit in 1987 when her husband qualified for disability retirement. Accordingly, the Jacksons were not aware that the Metropolitan Government had breached its contractual obligation to inform Mr. Jackson of the existence of this benefit. It would be unreasonable and unrealistic to impute either to Mr. Jackson or Ms. Jackson independent knowledge of the details of the group life insurance

---

[30] *See, e.g., Hunton v. Guardian Life Ins. Co.*, 243 F. Supp. 2d 686, 698-99 (S.D. Tex. 2001); *City of Philadelphia v. One Reading Ctr. Assocs.*, 143 F. Supp. 2d 508, 526 (E.D. Pa. 2001); *Bauman v. Day*, 892 P.2d 817, 827-28 (Alaska 1995); *Walk v. Ring*, 44 P.3d 990, 999 (Ariz. 2002); *April Enters, Inc. v. KTTV*, 195 Cal. Rptr. at 437; *Marcucilli v. Boardwalk Builders, Inc.*, No. CIV.A. 99C-02-007, 2002 WL 1038818, at *4 (Del. Super. May 16, 2002); *Dovenmuehle, Inc. v. Lawyers Title Ins. Corp.*, 478 So. 2d 423, 424-25 (Fla. Dist. Ct. App. 1985); *Strauser v. Westfield Ins. Co.*, 827 N.E.2d 1181, 1185 (Ind. Ct. App. 2005); *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981); *Snortland v. State*, 615 N.W.2d 574, 577 (N.D. 2000); *Maher v. Tietex Corp.*, 500 S.E.2d 204, 207 (S.C. Ct. App. 1998); *Gibson v. Ellis*, 58 S.W.3d 818, 823 (Tex. App. 2001); *Architechtonics Constr. Mgmt., Inc. v. Khorram*, 45 P.3d 1142, 1147 (Wash. Ct. App. 2002).

[31] The inherently undiscoverable requirement is met when the injured party is unlikely to discover the wrong during the limitations period despite due diligence. To be inherently undiscoverable, the wrong and injury must be unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff. *In re Coastal Plains, Inc.*, 179 F.3d 197, 214-15 (5th Cir. 1999).

policy that the Metropolitan Government had purchased or of the provision in the Metropolitan Code requiring that a waiver of premium benefit be included in the group life insurance contract.[32]

Thus, for the purposes of the discovery rule, it would have been difficult for the Jacksons to be aware of or discover that the Metropolitan Government had breached its contract in 1987 by failing to inform them of the existence of the waiver of premium benefit. The Metropolitan Government was in a far superior position when compared to the Jacksons, and because of its failure to notify them of the existence of this benefit, the Metropolitan Government had reason to believe that the Jacksons were unaware of both the existence of the benefit and the Metropolitan Government's breach.

Ms. Jackson first learned of the existence of the waiver of premium benefit in July 1998 when she applied for benefits following her husband's death. She was told at that time that she was ineligible for this benefit because Mr. Jackson had failed to apply for and qualify for the benefit within two years following his disability retirement in 1987. Ms. Jackson filed her lawsuit against the Metropolitan Government in December 2001, within six years following her discovery of the existence of the benefit and the Metropolitan Government's breach of contract. We have determined that Ms. Jackson may invoke the discovery rule and, therefore, that her complaint was timely filed. Accordingly, we reverse the summary judgment dismissing her breach of contract claim on the ground that it was not timely filed.

## V.
### MR. REESE'S BREACH OF CONTRACT CLAIM

Mr. Reese's claim stands on a factual footing far different from the claims of the other surviving spouses because his wife is the only employee who received timely notice of the waiver of premium benefit. Ms. Reese took disability retirement in February 1996, and in April 1996 she received two documents from the Metropolitan Government informing her of the waiver of premium benefit and the steps to be taken to qualify for it. Despite this information, Ms. Reese did not apply for the benefit until July 1999. Her application was rejected because it had not been filed within two years after she qualified for disability retirement.

Up to this point, the facts clearly do not support a breach of contract claim because the Metropolitan Government fulfilled its obligation under Metro. Code § 3.08.040(A)(3) to provide Ms. Reese "full information" regarding her rights and status. However, Mr. Reese relies on events occurring after July 1999 to support his breach of contract claim. On July 20, 2000, Aetna Life Insurance Company's manager of the Metropolitan Government's account wrote a letter to the Metropolitan Government proposing a "one time exception" for employees currently on disability who had failed to qualify for the waiver of premium benefit within two years of taking disability retirement. The Metropolitan Government declined this offer, apparently because it would have cost

---

[32]After all, the Metropolitan Council imposed on the Metropolitan Government the obligation to notify employees of their rights and benefits because the Council appreciated the complexity of the benefit plans and understood that most employees would be unable to discover the information on their own.

over $10,000,000. The Metropolitan Government never informed the persons on disability retirement of Aetna's offer or of its decision to reject the offer.

Ms. Reese died in April 2001. In his complaint filed in July 2001, Mr. Reese asserts that the Metropolitan Government breached its contract by failing to inform Ms. Reese of Aetna's proposal to offer employee's like his wife an opportunity to qualify for the waiver of premium benefit. This claim fails on three grounds. First, the Metropolitan Government does not have either the statutory or contractual obligation to inform its employees of its negotiations and discussions with insurance companies regarding changes in group insurance benefits. Second, while the Metropolitan Government has an obligation to act reasonably when it is procuring group health insurance benefits for its employees, it was not acting unreasonably when it declined to incur an additional $10,000,000 expense in order to offer employees a "one time exception" to the requirements to qualify for the waiver of premium benefit. Third, the Metropolitan Government had no obligation under Metro. Code § 3.08.040(A)(3) to inform disabled employees of the "one time exception" because it never became part of the employee benefit plan. Accordingly, the trial court properly determined that the Metropolitan Government was entitled to a dismissal of Mr. Reese's breach of contract claim as a matter of law.

## VI.
### THE BREACH OF CONTRACT CLAIMS OF MMES. GOOT, TAYLOR, AND DUKE

We now turn to the breach of contract claims of Mmes. Goot, Taylor, and Duke. The trial court granted a directed verdict for the Metropolitan Government at the close of their proof on the ground that they had failed to prove "the terms of the life insurance contract." Mmes. Goot, Taylor, and Duke assert that the trial court erred because the terms of the waiver of premium provision in the life insurance contract were not in dispute. For its part, the Metropolitan Government insists that the trial court erred by failing to direct a verdict on the ground that Mmes. Goot, Taylor, and Duke were not third-party beneficiaries of their deceased spouses' group insurance policies. We have determined that the trial court properly declined to direct a verdict on the Metropolitan Government's third-party beneficiary claim but that the trial court erred by directing a verdict because of the surviving spouses' failure to prove the terms of the waiver of premium provision.

## A.
### The Surviving Spouses as Intended Third-Party Beneficiaries of Their Spouses' Group Life Insurance Benefits

The Tennessee Supreme Court has adopted the "intent to benefit" test as set forth in the RESTATEMENT (SECOND) OF CONTRACTS § 302 (1981). The only third parties who may claim a legally enforceable interest in a contract are persons who the contracting parties intended to benefit. The court's test for determining whether a third party is an intended beneficiary provides:

> A third party is an intended third-party beneficiary of a contract, and
> thus is entitled to enforce the contract's terms, if
> (1)  The parties to the contract have not otherwise agreed;

(2)     Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and

(3)     The terms of the contract or the circumstances surrounding performance indicate that either:

(a)     the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or

(b)     the promisee intends to give the beneficiary the benefit of the promised performance.

*Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 70 (Tenn. 2001). An intended beneficiary's rights are measured by the contract itself, *United States Fid. & Guar. Co. v. Elam*, 198 Tenn. 194, 213-14, 278 S.W.2d 693, 702 (1955), thus courts must analyze third-party contract claims by construing the contract as a whole rather than in a piecemeal fashion. *Benton v. Vanderbilt Univ.*, 137 S.W.3d 614, 619-20 (Tenn. 2004).

The Metropolitan Government is obligated to provide all eligible employees with group life insurance coverage that contains a waiver of premium benefit. A life insurance policy is a mixture of contract and donative transfer, and when the policy is payable to someone other than the insured, it is a classic example of a third-party beneficiary contract. *Milbourne v. Conseco Servs., LLC*, 181 F. Supp. 2d 466, 468 (D. Md. 2002); *In re Estate of DeWitt*, 54 P.3d 849, 859 (Colo. 2002); *In re Estate of England*, No. WILLS FOLIO 114375, 2000 WL 128854, at *4 (Del. Ch. Jan. 4, 2000); *Chicago White Metal Casting, Inc. v. Treiber*, 517 N.E.2d 7, 11 (Ill. Ct. App. 1987). Once the insured names a beneficiary, there is no question that the employee, the employer, and the insurance company intend to benefit the named beneficiary.

When group insurance policies are involved, the courts generally view the employee as the intended third-party beneficiary of the contract for insurance between the employer and the insurance company. *Nidiffer v. Clinchfield R.R. Co.*, 600 S.W.2d at 246; *see also Roworth v. Minnesota Mut. Life Ins. Co.*, 674 F.2d 756, 758 (8th Cir. 1982); *Aetna Life Ins. Co. v. Messier*, 173 F. Supp. 90, 91 (D. Pa. 1959). Thus, the employees themselves have legally enforceable rights under the group insurance contracts. The courts have also extended the same rights to any beneficiary named by the employee as long as all the conditions of the policy have been fulfilled. *Bass v. John Hancock Mut. Life Ins. Co.*, 518 P.2d 1147, 1150 n.4 (Cal. 1974); *Keane v. Aetna Life Ins. Co.*, 91 A.2d 875, 883 (N.J. Super. Ct. 1952); 13 WILLISTON ON CONTRACTS § 37:29, at 186.

One of the principle reasons for purchasing life insurance is to confer a benefit on a third party following the death of the named insured. Accordingly, when the Metropolitan Government included life insurance among the group benefits available to its employees, it knew and intended that these death benefits would be paid upon the employee's death to the employee's beneficiary. It follows, therefore, that both the employee and the Metropolitan Government knew and intended that upon the death of the employee, the surviving spouse or other named beneficiary would be entitled to receive the death benefits as long as all the requirements for receiving these benefits had been fulfilled.

-17-

In light of the relationship between the employees and their beneficiaries, we conclude that surviving spouses of employees, as intended beneficiaries of the group life insurance benefit, could step into the shoes of their former spouse to pursue their claim that the Metropolitan Government breached the employment contract by failing to provide "full information" regarding the waiver of premium benefit as required by Metro. Code § 3.08.040(A)(3). Therefore, the trial court did not err when it declined to grant the Metropolitan Government's motion for directed verdict predicated upon its claim that the surviving spouses were not intended third-party beneficiaries of their former spouses' group life insurance benefit.

## B.
## The Surviving Spouses' Evidence Supporting Their Breach of Contract Claim

The final issue involves the trial court's decision to direct a verdict for the Metropolitan Government because Mmes. Goot, Taylor, and Duke did not introduce a copy of the group life insurance contract containing the waiver of premium benefit. Mmes. Goot, Taylor, and Duke assert that the trial court erred because the Metropolitan Government had never denied the existence of the group life insurance contract containing a waiver of premium provision or what the terms of the waiver of premium provision were. We agree, in light of the state of the pleadings and the Metropolitan Government's representations regarding the terms of the waiver of premium benefit during the pretrial proceedings. Based on the facts of this case, Mmes. Goot, Taylor, and Duke were not required to introduce a copy of the group life insurance contract in order to make out a prima facie breach of employment contract claim.

## 1.

All three surviving spouses alleged in their amended complaint that the Metropolitan Government provided its employees with group life insurance that contained a waiver of premium benefit for disabled employees. They also alleged that their spouses were eligible for this benefit and that their spouses would have qualified for it had they been told about it. In addition, they alleged that the Metropolitan Government breached its employment contract with their spouses by failing to inform them of the waiver of premium benefit in a timely manner and that as a result of this breach of contract, they received only $7,500 in death benefits as opposed to the $50,000 in death benefits they would have received had their spouse applied for the waiver of premium benefit in a timely manner.

The Metropolitan Government never filed an answer to the amended complaint or any of the earlier complaints filed by Mmes. Goot, Taylor, and Duke. However, in October 2002, it filed a motion for summary judgment and statements of undisputed fact regarding each surviving spouse's claim. It supported the motion and statements with the depositions of each of the surviving spouses and with the affidavit of its Assistant Director of Human Resources regarding the group life insurance policy and the waiver of premium provision. In its statements of undisputed facts, the Metropolitan Government asserted:

The Metropolitan Government provides life insurance coverage for its employees and former employees receiving a disability pension or a service pension.

Active employees receive life insurance coverage equal to twice their annual salary to a maximum of $50,000. Former employees receiving a service or disability pension receive coverage of a [sic] $7,500.

Employees who become disabled before the age of 60 can apply of [sic] a "waiver of premium" which, if approved, allows them to maintain their life insurance coverage at the same level they had as an active employee.

In order to receive approval for the waiver of premium and maintain the higher coverage, a disabled former employee must be disabled within the definition set forth in the insurance policy and make application to the life insurance company within the appropriate time frame.

The determination of whether a former employee qualifies for the waiver of premium benefit rests solely with the life insurance company.

The surviving spouses responded to the Metropolitan Government's statements of undisputed facts by stating that they did not dispute these facts. The case proceeded to trial after the trial court declined to find that the Metropolitan Government was entitled to a judgment as a matter of law on the surviving spouses' breach of employment contract claims.

At trial, the lawyer representing the Metropolitan Government conceded that the plaintiffs' spouses received group life insurance coverage when they were city employees and that this life insurance coverage contained a waiver of premium provision. However, the lawyer specifically declined to stipulate that the employees did not receive adequate notice of the waiver of premium benefit or that each of the surviving spouse's damages amounted to approximately $42,500. Thereafter, each of the surviving spouses testified (1) regarding her understanding of how the waiver of premium provision worked; (2) that her spouse either did not receive timely information regarding the waiver of premium benefit or received erroneous information regarding their eligibility for the benefit; (3) that her spouse would have applied for the waiver of premium benefit in a timely manner had he known about it; (4) that her spouse met all the requirements for the benefit; and (5) that as a result of her spouse's failure to submit a timely application for the waiver of premium benefit, she received a death benefit of $7,500 rather than the $50,000 benefit she would have otherwise

received.[33] On cross-examination, each of the surviving spouses testified that they had not read the group life insurance contract and that they had gained their understanding of the operation of the waiver of premium provision from employees of the Metropolitan Benefit Board.

The surviving spouses also presented the testimony of two former employees of the Metropolitan Benefit Board who described the Metropolitan Government's haphazard approach to informing disabled employees of the waiver of premium provision or how to qualify for it. During its cross-examination of these employees, the Metropolitan Government introduced into evidence one page of the thirteen-page letter purportedly given to all employees who qualified for a disability retirement. This letter contained the following statements regarding the waiver of premium provision:

> With the effective date of your disability pension, your life insurance, under coverage provided by The Metropolitan Government, will be reduced to $7,500 unless you are totally disabled. If you are totally disabled and are less than sixty (60) years of age, then you may apply for a waiver of premium and the amount of insurance that you had in effect as an employee will continue in effect. You are considered to be totally disabled if you are completely prevented by injury or sickness from doing, for pay or profit, any work for which you are fitted by education, training, and experience. The amount of your insurance coverage will be $7,500 at age 65.
>
> Should you die within the first (1st) year of being on a disability pension, the amount of insurance that was available to you as an employee is still in effect if it can be shown that you were totally disabled. If you are totally disabled, you may continue to be covered for the amount that you received as an employee if you file proof of your disability within one (1) year of going on disability. If you wish to file such a claim, you should contact the Benefit Board Office and we will assist you in processing that application.

Thus, when the surviving spouses closed their case-in-chief, the following proof was before the jury: (1) that the Metropolitan Government offered group life insurance containing a waiver of premium provision to its employees; (2) that all city employees received life insurance coverage equal to twice their annual salary up to $50,000; (3) that the life insurance benefit for employees on disability retirement was $7,500; (4) that employees who became totally disabled before their sixtieth birthday were eligible for the waiver of premium benefit and that if they qualified for the benefit, their life insurance coverage would continue at the level it was when they were active employees; (5) that the spouses of each of the plaintiffs became disabled before their sixtieth birthday and that they were totally disabled; (6) that the Metropolitan Government was required to provide all its

---

[33]While none of the surviving spouses testified about the income their spouse was earning when he became disabled, their testimony that they would have received the $50,000 death benefit permits an inference that all of the surviving spouses were earning $25,000 per year or more when they became disabled.

employees with "full information" of their rights and status regarding their benefits; and (7) that neither the employee spouses nor the plaintiffs were provided "full information" regarding the waiver of premium provision when they were approved for a disability retirement.

Following the close of the surviving spouses' case-in-chief, the Metropolitan Government moved for a directed verdict on six grounds. Two of these grounds were (1) that the plaintiffs had failed to prove the "elements" of the group life insurance contract and (2) that the plaintiffs had failed to present medical evidence demonstrating that their spouses would have qualified for the waiver of premium benefit had they applied for it in a timely manner. The trial court granted the Metropolitan Government a directed verdict on both of these grounds. While the court did not focus on the absence of medical evidence, it held that the surviving spouses had failed to prove what the qualifications for the waiver of premium benefit were and whether their spouses met these requirements because they failed to introduce a copy of the group life insurance contract.[34] The court stated that it believed that the jury would be left to speculate regarding the amount of the surviving spouses' damages unless they had a copy of the group insurance contract containing the waiver of premium provision.

## 2.

The preparation and trial of this case by both lawyers leaves much to be desired. The chief shortcomings are the Metropolitan Government's failure to file an answer to the surviving spouses' complaint and the failure of the lawyer representing the surviving spouses to bring this significant oversight to anyone's attention before the close of the plaintiffs' case-in-chief.[35] The pleadings required by Tenn. R. Civ. P. 7 and 8 are not vestigial appendages to litigation. Their purpose is to provide notice of the parties' claims and defenses. ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 5-4(a), at 5-41 (2004) ("TENNESSEE CIVIL PROCEDURE"). The purpose of Tenn. R. Civ. P. 8.04 is to ensure that the defendant's answer gives the plaintiff notice of those allegations in the complaint that are uncontested and that will not be an issue at trial. TENNESSEE CIVIL PROCEDURE, § 5-4(f), at 5-56. There is no question that the disputed factual and legal issues in this case were not brought into sharp focus because of the Metropolitan Government's failure to file an answer.

The shortcomings in the surviving spouses' case-in-chief cannot, in fairness, be attributed solely to the surviving spouses themselves. They are the result, in no small measure, of the Metropolitan Government's failure to file an answer and by the Metropolitan Government's pretrial assertions regarding the existence and terms of the group life insurance contract, particularly the waiver of premium provision. Had the Metropolitan Government denied the existence of the group

---

[34]This decision appears to be premised on the best evidence rule, Tenn. R. Evid. 1002, even though the Metropolitan Government did not make a best evidence objection during the surviving spouses' case-in-chief.

[35]Tenn. R. Civ. P. 8.04 provides that averments in a pleading to which a responsive pleading is required are deemed admitted when not denied in the responsive pleading. However, when no responsive pleading is filed, the opposing party must invoke the default judgment procedures in Tenn. R. Civ. P. 55 rather than wait until trial and invoke Tenn. R. Civ. P. 8.04. *Smith v. Smith*, 643 S.W.2d 320, 323 (Tenn. 1982); *Edwards v. Edwards*, 501 S.W.2d 283, 290 (Tenn. Ct. App. 1973); *see also Story v. Lanier*, 166 S.W.3d 167, 182-83 (Tenn. Ct. App. 2004).

life insurance contract containing the waiver of premium provision for disabled employees, which it did not, the surviving spouses would, most likely, have presented more detailed evidence regarding the existence and terms of the contract. Had the Metropolitan Government denied that the surviving spouses' understanding and interpretation of the waiver of premium provision, which it did not, the surviving spouses would, most likely, have presented more detailed evidence regarding the terms of the waiver of premium provision. Had the Metropolitan Government denied that their spouses' age or the extent of their spouses' disability would not have been sufficient to qualify for the waiver of premium benefit, which it did not, the plaintiffs would, most likely, have presented more detailed evidence supporting claim that their spouses qualified for the benefit.

However, not only did the Metropolitan Government fail to take issue with the surviving spouses' understanding of the waiver of premium provision, its portrayal of the provision throughout the proceedings leading up to the trial was essentially identical to the understanding of the surviving spouses. The Metropolitan Government's posture throughout the pretrial proceedings would have led a reasonable person to infer that the Metropolitan Government was conceding the existence of the group life insurance contract containing the waiver of premium provision for disabled employees and the specific terms of the waiver of premium provision.

A court's ability to address its workload fairly and efficiently depends in large measure on the consistency and clarity of the parties' claims and defenses. *Monroe County Motor Co. v. Tennessee Odin Ins. Co.*, 33 Tenn. App. 223, 231, 231 S.W.2d 386, 390 (1950) (holding that the rule preventing litigants from taking inconsistent positions is "necessary to the orderly dispatch of litigation"). Thus, litigants will not be permitted to play fast and loose with the courts or with their adversaries by taking inconsistent or contrary positions. *Johnston v. Cincinnati, N.O. & T.P. Ry.*, 146 Tenn. 135, 159, 240 S.W. 429, 436 (1922); *Webber v. Webber*, 109 S.W.3d 357, 359 (Tenn. Ct. App. 2003); *Cothron v. Scott*, 60 Tenn. App. 298, 304, 446 S.W.2d 533, 535-36 (1969).

The Metropolitan Government's claim that it was entitled to a directed verdict because the surviving spouses did not introduce a copy of the group life insurance contract containing the waiver of premium provision is inconsistent with its position during all the pretrial proceedings. This suit involves an alleged breach of an employment contract, not a group life insurance contract. There was no dispute prior to the trial regarding the existence or the terms of the group life insurance contract. The only possible disputes involved the adequacy of the employees' notice of the waiver of the premium provision, whether the plaintiffs' spouses met the age and disability requirements of the provision, and, if they did, the amount of the benefit. Thus, just as the Metropolitan Government's failure to file an answer prevented it from belatedly asserting a statute of limitations defense, its failure to deny the existence of the group life insurance contract or the terms of the waiver of premium provision should have undermined its request for a directed verdict on the ground that the surviving spouses did not establish the existence of the waiver of premium benefit by introducing a copy of the group life insurance contract.

The Metropolitan Government has always been in the best position to know the precise terms of the group life insurance contract and the waiver of premium provision. After all, it is one of the parties to the group life insurance contract, and the contract has been in its possession and under its control throughout the litigation. Its own employees testified regarding the relevant provisions of

the contract, and their testimony was entirely consistent with the surviving spouses' testimony regarding their understanding of the contract. There was no material factual dispute regarding the operative provisions of the group life insurance contract or the waiver of premium provision. Accordingly, the Metropolitan Government was not entitled to a directed verdict on the surviving spouses' breach of employment contract claim.

During their case-in-chief, the surviving spouses presented proof (1) that each spouse was less than sixty years of age when he became disabled, (2) that each spouse was disabled enough to qualify for the waiver of premium benefit, (3) that each spouse would have qualified for the waiver of premium benefit had they been informed of the benefit in a timely manner, and, therefore, (4) that each spouse would have received the maximum $50,000 benefit rather than the $7,500 they actually received had the Metropolitan Government fulfilled its obligation to provide their spouses with "full information" regarding the waiver of premium provision in a timely manner.[36] No speculation is needed to arrive at the conclusion that the surviving spouses had been damaged by approximately $42,500 by virtue of the Metropolitan Government's alleged breach of the employment contract. This evidence is sufficient to withstand the directed verdict and to place the burden on the Metropolitan Government to prove (1) that the surviving spouses' understanding of the terms of the waiver of premium provision was incorrect, (2) that the employee spouses were too old to qualify for the waiver of premium benefit, (3) that the employee spouses were not disabled enough to qualify for the waiver of premium benefit, or (4) that the employee spouses' salaries were too low to qualify them for the maximum $50,000 benefit.

## VII.

In summary, we affirm the dismissal of all surviving spouses' intentional tort claims and Mr. Reese's breach of contract claim. We reverse the summary judgment dismissing Ms. Jackson's breach of contract claim, as well as the directed verdict dismissing the breach of contract claims of Mmes. Goot, Taylor, and Duke. We remand the cases to the trial court for further proceedings consistent with this opinion, and we tax the costs of this appeal to the Metropolitan Government of Nashville and Davidson County.

---

WILLIAM C. KOCH, JR., P.J., M.S.

---

[36]We have already pointed out that the surviving spouses' testimony that they would have received $50,000 is premised on the reasonable inference that each of the spouses were earning $25,000 or more each year while they were active employees.